THE STATE OF OHIO, DEPARTMENT OF ENERGY, APPELLANT AND CROSS-APPELLEE, *v.* COLUMBIA GAS TRANSMISSION CORP. ET AL., APPELLEES AND CROSS-APPELLANTS.

(No. 79-87—Decided November 7, 1979.)

*Mr. William J. Brown,* attorney general, and *Mr. David E. Northrop,* for appellant and cross-appellee.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Duke W. Thomas* and *Mr. Lance W. Schneier,* for appellees and cross-appellants.

*Per Curiam.* The determinative issue in this appeal is whether defendants-appellees are "major utility facilities" subject to the reporting requirements of R. C. 1551.17 (B).[1] Appellees contend they are exempt from the obligation to furnish ten-year forecasts to the DOE because they are "natural gas transmission lines over which an agency of the United States has exclusive jurisdiction."[2]

---

[1] R. C. 1551.17 (B) requires that:

"Each person owning or operating a major utility facility within this state, or furnishing gas, natural gas, or electricity directly to more than twenty-five consumers within this state shall annually furnish a report to the division of planning and forecasts for its review containing a ten-year forecast of loads, resources, and prospective sites. The report shall describe the major utility facilities which, in the judgment of such person, will be required to supply system demands during the forecast period. The forecast shall cover the ten-year period next succeeding the date of such report, and shall be made available to the public and furnished upon request to municipal corporations and governmental agencies charged with the duty of protecting the environment or of planning land use. The report shall be in such form and shall contain such information as may be prescribed by the division."

[2] As defined in R. C. 1551.17 (A) (1) (c), a "major utility facility" includes:

"A gas or natural gas transmission line and associated facilities designed for, or capable of, transporting gas or natural gas at pressures in excess of one hundred twenty-five pounds per square inch.

" 'Major utility facility' does not include electric, gas, natural gas distributing lines and gas or natural gas gathering lines and associated facilities as defined by the division of planning and forecasts, nor gas or natural gas transmission lines over which an agency of the United States has exclusive jurisdiction."

Admittedly, the Natural Gas Act, Section 717 *et seq.*, Title 15, U. S. Code, provides the Federal Energy Regulatory Commission (FERC) with jurisdiction over activities of interstate gas transmission companies, such as appellees. However, stating this fact merely begs the question of what activities the FERC regulates to the exclusion of the states.[3] In this regard appellees stress that the definition of a "major utility facility" in R. C. 1551.17 (A) (1) (c) is identical to that contained in R. C. 4906.01. R. C. Chapter 4906 provides the PSC with authority, *inter alia,* to issue or deny certificates to construct major utility facilities in this state. Beginning with the premise that construction of their facilities is within the exclusive regulatory jurisdiction of the FERC (an issue not properly before us and one on which we express no opinion), appellees argue that they fall within the exemption to a "major utility facility" contained in R. C. 4906.01. Since the identical definitional language exists in R. C. 1551.17 (A) (1) (c), appellees conclude that they are also exempt from the reporting requirements of R. C. 1551.17 (B).

In support of this interpretation appellees cite *State, ex rel. Bohan,* v. *Indus. Comm.* (1946), 146 Ohio St. 618, paragraph one of the syllabus, which states that, "[w]here the same word or phrase is used more than once in *a statute,* in relation to the same subject and the *same purpose,* if it is clear in one connection and doubtful or obscure in another, it will have the same construction in the latter as in the former, unless a different construction is plainly called for." (Emphasis added.) However, here, we are faced not with one statute but with two separate enactments having different purposes, thus this principle of statutory construction is inapposite.

The primary responsibility of the Ohio Power Siting Commission under R. C. Chapter 4906 is to regulate the con-

---

[3] This problem was addressed similarly by Justice Stone's dissent in *Hines* v. *Davidowitz* (1941), 312 U. S. 52, 78-79, wherein he remarked that, "[l]ittle aid can be derived from the vague and illusory but often repeated formula that Congress 'by occupying the field' has excluded from it all state legislation. Every Act of Congress occupies some field, but we must know the boundaries of that field before we can say that it has precluded a state from the exercise of any power reserved to it by the Constitution."

struction of major utility facilities, and the exemption in R. C. 4906.01 must be read in light of that responsibility. On the other hand, the primary purpose for requiring the submission of ten-year forecasts under R. C. 1551.17 (B) is to aid the Department of Energy in its responsibility for state energy planning.[4] The R. C. 1551.17 (A) (1) (c) exemption must be considered in view of that purpose. In other words, we must determine whether the Federal Energy Regulatory Commission has exclusive jurisdiction over the submission of similar forecast information by interstate gas transmission companies.

We find that by including the term "exclusive jurisdiction" in the definitional statute, the General Assembly merely codified the constitutional principle that the Supremacy Clause prohibits a state from affecting an activity that the federal government has preempted. Thus, by applying the doctrine of federal preemption we can determine whether appellees are exempt from filing ten-year forecasts with the DOE.

The United States Supreme Court has had several occasions to apply the preemption doctrine to the Natural Gas Act. In *Panhandle Eastern Pipe Line Co.* v. *Pub. Serv. Comm. of Ind.* (1947), 332 U. S. 506, 516, the court found three subjects to be preempted by the Act: "(1) the transportation of natural gas in interstate commerce; (2) its sale in interstate commerce for resale; and (3) natural gas companies engaged in such transportation or sale." Earlier, in *FPC* v. *Hope Natural Gas Co.* (1944), 320 U. S. 591, 609, the court stated that "***the purpose of the Natural Gas Act was to provide, 'through the exercise of the national power over interstate commerce, an agency for regulating the wholesale distribution to public service companies of natural gas moving interstate, which this Court has declared to be interstate commerce not subject to certain types of state regulation.' "

However, against contentions that, by passing the Act, Congress meant to prohibit any state activity in this area, the

---

[4] Specifically the forecast reports are used by personnel within the Department of Energy to comply with their various duties under R. C. 1551.02 (D), 1551.04, 1551.05, 1551.07 and 1551.17 (c).

Supreme Court has held that "***the Natural Gas Act did not envisage federal regulation of the entire natural-gas field to the limit of constitutional power." *FPC* v. *Panhandle Eastern Pipe Line Co.* (1949), 337 U. S. 498, 502. "The Act, though extending federal regulation, had no purpose or effect to cut down state power. ***The Act was drawn with meticulous regard to the continued exercise of state power, not to handicap or dilute it in any way." *Panhandle Eastern Pipe Line Co.* v. *Pub. Serv. Comm. of Ind., supra,* at 517-518. It has been stated repeatedly that the Natural Gas Act was created as "a comprehensive scheme of regulation which would be *complementary* in its operation to that of the states," and that "Congress contemplated a *harmonious, dual* system of regulation of the natural gas industry—federal and state regulatory bodies operating side by side, each active in its own sphere." *Pub. Util. Comm. of Ohio* v. *United Fuel Gas Co.* (1943), 317 U. S. 456, 467 (Emphasis added.) See, also, *FPC* v. *Louisiana Power & Light Co.* (1972), 406 U. S. 621, 631; *Hope Natural Gas Co., supra,* at 610; and *Panhandle Eastern Pipe Line Co., supra,* at 520.

In determining whether Congress meant to preempt a specific exercise of state police power, " '***such intent is not to be implied unless the act of Congress fairly interpreted is in actual conflict with the law of the State.' " *Huron Portland Cement Co.* v. *Detroit* (1960), 362 U. S. 440, 443. If the state attempted to regulate the transportation or sale for resale of appellees' natural gas, a conflict would be evident. See, *e.g., FPC* v. *Louisiana Power & Light Co., supra.* However, when the DOE merely requires the submission of forecast information no such conflict with FERC regulation is readily apparent. In fact, the Natural Gas Act explicitly provides "[t]hat nothing in this chapter shall relieve any such natural-gas company from keeping any accounts, memoranda, or records which such natural gas company may be required to keep by or under authority of the laws of any State." Section 717g, Title 15, U. S. Code.

This court, in comparing the reporting requirements of R. C. 1551.17 (B) with the commands of the Natural Gas Act, finds no evident conflict and concludes that the gathering of information from interstate gas transmission companies has

not been federally preempted.[5] Therefore, appellees are "major utility facilities" which must comply with R. C. 1551.17 (B).[6]

Appellees also contend that the reporting requirements of R. C. 1551.17 (B) violate the Commerce Clause. As stated in *Panhandle Eastern Pipe Line Co.* v. *Pub. Util. Comm.* (1978), 56 Ohio St. 2d 334, 339:

"States may regulate areas of interstate commerce which are local in nature as long as such regulation does not impose an undue burden on the flow of that commerce.* * *

"It is the function of this court to examine the local interests served by commission regulation* * *and then balance those concerns against the burden placed on interstate commerce."

We find that the forecast reports are necessary if the DOE is to effectively perform its function of state energy planning. On the other hand, while the task of submitting the required forecasts will entail some expense for appellees, the burden on interstate commerce seems minimal. The United States Supreme Court, in *Arkansas Louisiana Gas Co.* v. *Dept. of Pub. Util.* (1938), 304 U. S. 61, was faced with a nearly identical question. The utility therein challenged a state order compelling it to file certain information relative to its interstate sales and deliveries as being violative of the Commerce Clause. The court was not swayed. It concluded at page 63, that "[w]e are unable to see that merely to require comprehensive reports* * *would materially burden or unduly interfere with the free flow of commerce between the States." We likewise find no undue burden on interstate commerce.

Since we find that appellees are "major utility facilities"

---

[5] Appellees contend that the Federal Energy Regulatory Commission demands from them some of the same information required by R. C. 1551.17 (B). Assuming, *arguendo*, the truth of this contention, it goes to the wisdom of the legislation, not to the authority of the Department of Energy to compel such data.

[6] Appellees maintain that if the R. C. 1551.17 (A) (1) (c) exemption does not apply to them, it is a nullity. We disagree. Merely because no one presently falls within the exemption does not mean it cannot have future applicability, if the federal government extends its authority in this area.

and that no constitutional infirmities prevent appellant from requiring them to submit the ten-year forecasts, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

HERBERT and P. BROWN, JJ., dissent.


PAUL W. BROWN, J., dissenting. The majority places a reporting burden upon appellees that can not be justified in light of the "exclusive jurisdiction" exemption within R. C. 1551.17 (A) (1) (c). That statute, in defining the major utility facilities that must submit ten-year forecasts, excludes "gas or natural gas transmission lines over which an agency of the United States has exclusive jurisdiction." This exemption was shifted to its present statutory position when the Department of Energy was created. This court has in the past adhered to the position that "it is a basic presumption in statutory construction that the General Assembly is not presumed to do a vain or useless thing, and that when language is inserted in a statute it is inserted to accomplish some definite purpose." *State, ex rel. Cleveland Electric Illuminating Co., v. Euclid* (1959), 169 Ohio St. 476, at page 479. Yet, if this statutory exemption does not apply to the appellees, it does not apply to anyone. The majority has effectively interpreted this provision out of existence.

HERBERT, J., concurs in the foregoing dissenting opinion.