592 S.E.2d 818

In re: **WEST VIRGINIA ASBESTOS LITIGATION**

No. 31237.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 28, 2003.

Decided Dec. 4, 2003.

Robert F. Daley, Esq., Mark T. Coulter, Esq., D. Aaron Rihn, Esq., Pierce, Raimond & Coulter, PC, Pittsburgh, Pennsylvania, James F. Humphreys, Esq., J. David Cecil, Esq., James F. Humphreys & Associates, LC, Charleston, West Virginia, Leslie Crosco, Esq., John R. Rowen, Esq., Edward Beachler, Esq., Hartley, O'Brien, Parsons, Thompson & Hill, Wheeling, West Virginia, Jon B. Orndorff, Esq., Roy D. Baker, Jr., Esq., Baker, Lancianese & Conaty, Huntington, West Virginia, Attorneys for Old Orchard Industrial Corp.

Bruce E. Mattock, Esq., Theodore Goldberg, Esq., Brian Alan Prim, Esq., David B. Rhodes, Esq., Goldberg, Persky, Jennings & White, Huntington, West Virginia, Stuart Calwell, Esq., John H. Skaggs, Esq., The Calwell Practice, PLLC, Scott S. Segal, Esq., The Segal Law Firm, William K. Schwartz, Esq., Harvit & Shwartz, Charleston, West Virginia, Attorneys for Plaintiffs Below, Appellees.

Benjamin L. Bailey, Esq., Jonathan D. Boggs, Esq., Bailey & Glasser, LLP, Charleston, West Virginia, W. Thomas McGough, Sr., Esq., Dona M. Doblick, Esq., Reed, Smith, Shaw & McClay, Pittsburgh, Pennsylvania, Attorneys for Railroad Friction Products Co.

Robert H. Sweeney, Jr., Esq., Michael A. Frye, Esq., Jenkins Fenstermaker, PLLC, James K. Toohey, Esq., Ross & Hardies, Chicago, Illinois, Attorneys for American Standard, Inc.

Stephen M. Schwartz, Esq., R. Scott Long, Esq., Hendrickson & Long, Charleston, West Virginia Daniel Markewich, Esq., Ellen Margolis, Esq., Mound, Cotton, Wollan & Greengrass, New York, New York, Attorneys for Viad Corp.

Leo G. Daly, Esq., Bethann R. Lloyd, Esq., Grogan, Graffam, McGinley & Lucchino, Pittsburgh, Pennsylvania, Attorneys for Amicus Curiae Budd Co.

John Hedges, Esq., Teresa Lyons, Esq., Byrne & Hedges, Morgantown, West Virginia, Attorney for Amicus Curiae AFL–CIO.

J. Weldon Granger, Esq., Houston, Texas, John D. Roven, Esq., Roven, Kaplan &

Wells, Houston, Texas, James O'Brien, Esq., Leslie Crosco, Esq., Hartley, O'Brien, Thompson & Hill, Wheeling, West Virginia, Willard J. Moody, Esq., Moody, Strople, Kloeppel, Basilone & Higginbotham, Inc., Portsmouth, Virginia, Richard J. Sherpe, Esq., Glasser & Glasser, P.L.C., Norfolk, Virginia, Attorneys for Amici Curiae International Association of Machinists & Aerospace Workers and National Association of Retired and Veteran Railway Employees, Inc.

McGRAW, Justice:

## I.

### FACTS

These certified questions come to the Court from a mass litigation proceeding from Kanawha County in which several thousand current and former railroad employees allege that they have been injured by exposure to asbestos-containing products. The employees sued both the railroads and the manufacturers of various products used by the railroads. The defendant manufacturers moved for summary judgment and asserted that federal law preempted the plaintiffs' claims against them. The lower court denied the motions for summary judgment and certified the following questions to this Court:

1. Are state tort law claims against manufacturers of parts or components of trains, locomotives, railcars, and similar vehicles used on any railroad, which is engaged in interstate or foreign commerce, preempted by federal law under the Safety Appliance Act, 49 U.S.C. § 20301 *et seq.?*

2. Are state tort law claims against manufacturers of parts or components of trains, locomotives, railcars, and similar vehicles used on any railroad, which is engaged in interstate or foreign commerce, preempted by federal law under the Federal Railroad Safety Act, 49 U.S.C. § 20101 *et seq.?*

3. Are state tort law claims against manufacturers of parts or components of railroad locomotives preempted by federal law

under the Locomotive Boiler Inspection Act, 49 U.S.C. § 20701 *et seq.?*

The lower court answered all of these questions in the negative, finding that federal law does not preempt the claims against the manufacturers. For the reasons set forth below, we disagree with the lower court and answer the third certified question in the affirmative. Because this finding makes consideration of the first two questions unnecessary, we decline to answer them.

## II.

### STANDARD OF REVIEW

■ Because we are asked to answer a certified question, our review of the matter is plenary. "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996); syl. pt. 2, *Keplinger v. Virginia Electric & Power Co.,* 208 W.Va. 11, 537 S.E.2d 632 (2000); syl. pt. 2, *Charter Communications v. Community Antenna Serv., Inc.,* 211 W.Va. 71, 561 S.E.2d 793 (2002); syl. pt. 1, *Board of Educ. of County of Taylor v. Board of Educ. of County of Marion,* 213 W.Va. 182, 578 S.E.2d 376 (2003).

## III.

### DISCUSSION

As defendants [1] point out repeatedly, railroads have been "subject to comprehensive federal regulation for [over] a century." *Carrillo v. ACF Ind., Inc.,* 20 Cal.4th 1158, 1163, 86 Cal.Rptr.2d 832, 835, 980 P.2d 386, 389 (1999), quoting *United Transp. Union v. Long Island R. Co.,* 455 U.S. 678, 687, 102 S.Ct. 1349, 1355, 71 L.Ed.2d 547, 555 (1982) (as modified) (quotation omitted). Railroad law is unique in the breadth, degree, and comprehensiveness of federal oversight and involvement. The growth of the railroads in the 19th Century forced the progress of our law in workplace safety, property rights, and interstate commerce just as it drove the commercial development of much of the nation.

1. We shall simply refer to the appellants/defendants below and appellees/plaintiffs below as de-

fendants and plaintiffs, respectively, for the remainder of this opinion.

Boiler explosions or derailments killed many workers and passengers; crossing accidents killed many more. The loss of life forced Congress to act.

In 1893, Congress passed the first of what we now call the Safety Appliance Acts, followed in 1911 by the Boiler Inspection Act (also called the Locomotive Boiler Inspection Act or the Locomotive Inspection Act, abbreviated either LIA or BIA). The Boiler Inspection Act can now be found at 49 U.S.C. § 20701, *et seq.*, and the Safety Appliance Act at 49 U.S.C. § 20301 *et seq.* Together these Acts standardized the safety requirements for many aspects of railroad operation, including brakes, lights, grab bars, coupling devices, pressure relief devices, and other such items.

In 1970, Congress passed the Federal Railroad Safety Act, also known as the FRSA, which gives broad powers to the Secretary of Transportation to create rules governing all aspects of railroad safety. The Federal Railroad Safety Act did not overrule or invalidate the other two statutes, but did allow federal oversight of a greater variety of railroad practices.

■ Defendants argue that the plaintiffs' claims against them are preempted by the foregoing federal statutes. As this Court has explained previously, the Supremacy Clause of the United States Constitution provides the basis for any preemption claim:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. This Court is, of course, obligated to honor the clause. "The Supremacy Clause of the United States Constitution, Article VI, Clause 2, invalidates state laws that interfere with or are contrary to federal law." Syl. pt. 1, *Cutright v. Metropolitan Life Ins. Co.*, 201 W.Va. 50, 491 S.E.2d 308 (1997).

■ However, it is clear that state courts, including our own, have the authority to decide whether a state provision is indeed preempted by federal law. As the U.S. Supreme Court explained: "[W]hen a state proceeding presents a federal issue, even a preemption issue, the proper course is to seek resolution of that issue by the state court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149–50, 108 S.Ct. 1684, 1691, 100 L.Ed.2d 127, 138 (1988). Accordingly, our Court recently held that: "West Virginia state courts have subject matter jurisdiction over federal preemption defenses." Syl. pt. 3, *State ex rel. Orlofske v. City of Wheeling*, 212 W.Va. 538, 575 S.E.2d 148 (2002).

■ Moreover, both this Court and the U.S. Supreme Court have explained that federal preemption of state court authority is generally the exception, and not the rule. As our Court has stated: "Despite the existence of this doctrine, however, preemption is disfavored in the absence of convincing evidence warranting its application [.]" *Hartley Marine Corp. v. Mierke*, 196 W.Va. 669, 673, 474 S.E.2d 599, 603 (1996), *cert denied sub nom. Hartley Marine Corp. v. Paige*, 519 U.S. 1108, 117 S.Ct. 942, 136 L.Ed.2d 832 (1997). Accordingly, "[a]s a result, there is a strong presumption that Congress does not intend to preempt areas of traditional state regulation." *Chevy Chase Bank v. McCamant*, 204 W.Va. 295, 300, 512 S.E.2d 217, 222 (1998) (citing, *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)).

As we noted above, our view is in agreement with that of the U.S. Supreme Court on this issue:

[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, and particularly in those in which Congress has "legislated ... in a field which the States have traditionally occupied," *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947), we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that

was the clear and manifest purpose of Congress.

*Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700, 715 (1996) (internal quotations and citation omitted); *accord, City of Columbus v. Ours Garage and Wrecker Service, Inc.,* 536 U.S. 424, 426, 122 S.Ct. 2226, 2229, 153 L.Ed.2d 430, 444 (2002).

■ Preemption may either be explicit, *i.e.,* set forth in the federal statute, or implied. When implied, preemption may take two forms.

[I]n the absence of explicit statutory language signaling an intent to pre-empt, we infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the states to supplement federal law, or where the state law at issue conflicts with federal law, either because it is impossible to comply with both or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives[.]

*Hartley,* 196 W.Va. at 674, 474 S.E.2d at 604 (quoting, *Northwest Cent. Pipeline Corp. v. Kansas Corp. Comm'n,* 489 U.S. 493, 509, 109 S.Ct. 1262, 1273, 103 L.Ed.2d 509 (1989)).

■ Defendants argue that we should consider the plaintiffs' claims against them barred via field preemption of the area of railroad safety by the federal statutes at issue. As we noted in *Hartley,* "field preemption occurs where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Hartley,* 196 W.Va. at 674, 474 S.E.2d at 604 (quoting *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 98, 112 S.Ct. 2374, 2383,

120 L.Ed.2d 73, 84 (1992) (citations omitted)). Plaintiffs argue that the federal statutes, while they might prevent the states from imposing requirements upon the railroads by means of more demanding state legislation or administrative rules, do not preempt their tort claims.

■ In spite of the strong presumption against federal preemption noted in *Medtronic* and *City of Columbus* and our own opinion in *Hartley,* an overwhelming body of case law persuades us that, through passage of the Boiler Inspection Act, Congress has occupied the field of railroad safety so pervasively that plaintiffs' claims against the defendants are preempted.[2] We do not reach this conclusion lightly, but find any other path blocked by an avalanche of adverse authority from other jurisdictions, both state and federal.

The leading, modern case on this issue is that of *Law v. General Motors Corp.,* 114 F.3d 908 (9thCir.1997), which relied upon the earlier U.S. Supreme Court case of *Napier v. Atlantic Coast Line R.R.,* 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 (1926). In *Napier,* the Supreme Court considered railroad challenges to a Georgia law that required all trains operating in that state to have an automatic door on the combustion chamber of the locomotive, and a Wisconsin law that required a special curtain to protect the workers from heat and fire. The Court held that the Boiler Inspection Act preempted the states from enforcing these laws. Discussing the provisions of that Act, the Court found that, "the power delegated to the [Interstate Commerce] Commission is a general one. It extends to the design, the construction and the material of every part of the locomotive

---

**2.** Plaintiffs raise the specter of innocent plaintiffs left without any remedy. The Court agrees that this should be avoided:

[W]e are mindful that "[f]or every wrong there is supposed to be a remedy somewhere." *Sanders v. Meredith,* 78 W. Va. 564, 572, 89 S.E. 733, 736 (1916). This Court has opined that "[t]he concept of American justice ... pronounces that for every wrong there is a remedy. It is incompatible with this concept to deprive a wrongfully injured party of a remedy[.]" *O'Neil v. City of Parkersburg,* 160 W. Va. 694, 697, 237 S.E.2d 504, 506 (1977) (cita-

tion omitted). See also *Gardner v. Buckeye Sav. & Loan Co.,* 108 W. Va. 673, 680, 152 S.E. 530, 533 (1930) ("It is the proud boast of all lovers of justice that for every wrong there is a remedy.").

*Hannah v. Heeter,* 213 W.Va. 704, 710, 584 S.E.2d 560, 566 (2003). However, the arguments of counsel lead us to believe that there are no such plaintiffs in this case, and that all the plaintiffs have a remedy against the railroads under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq.*

and tender and of all appurtenances." *Id.,* 272 U.S. at 611, 47 S.Ct. at 209, 71 L.Ed. at 438. The *Napier* Court ultimately held:

> We hold that state legislation is precluded, because the Boiler Inspection Act, as we construe it, was intended to occupy the field. The broad scope of the authority conferred upon the Commission leads to that conclusion. Because the standard set by the Commission must prevail, requirements by the States are precluded, however commendable or however different their purpose.

*Id.,* 272 U.S. at 613, 47 S.Ct. at 210, 71 L.Ed. at 439.

In the more modern case of *Law,* the Ninth Circuit considered the claims made by railroad workers against the manufacturers of train parts and components. The plaintiffs claimed that the defective design of the parts or components exposed the workers to excessive noise that damaged their hearing. Relying on *Napier,* the *Law* Court explained: "This broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across state lines. Locomotives are designed to travel long distances, with most railroad routes wending through interstate commerce." *Law v. General Motors Corp.,* 114 F.3d 908, 910 (9thCir.1997).

The plaintiffs in *Law,* like those in the instant case, claimed that the federal laws should only be applied to the railroads themselves, and not to the defendant manufacturers. The *Law* Court addressed this issue head on.

> Appellants nevertheless argue that their claims are not preempted because they are directed against railroad equipment manufacturers, not operators. This distinction—founded on the fact that the BIA speaks only to "railroad carriers[s]" and not manufacturers, *see* 49 U.S.C. § 20701—is without significance. The BIA preempts any state action that would affect "the design, the construction, and the material" of locomotives. *Napier* 272 U.S. at 611, 47 S.Ct. 207. Imposing tort liability on railroad equipment manufacturers would do just that, by forcing them to conform to design and construction standards imposed by the states. This would

transfer the regulatory locus from the Secretary of Transportation to the state courts—a result the BIA was clearly intended to foreclose.

*Id.* at 911–12 (footnote omitted).

Since the Ninth Circuit's decision in *Law,* many other jurisdictions have adopted a similar view. As the Alabama Supreme Court recently noted: "A majority of courts have followed the reasoning articulated by the Ninth Circuit Court of Appeals and have also found that the [Boiler Inspection Act] preempts common-law actions against both locomotive operators and locomotive manufacturers." *General Motors Corporation v. Charles W. Kilgore et al.,* 853 So.2d 171 (2002). We note the following authority is in accord: *Scheiding v. General Motors Corp.,* 22 Cal.4th 471, 993 P.2d 996, 93 Cal.Rptr.2d 342 (2000) (Boiler Inspection Act preempts employees' product-liability actions against a manufacturer of locomotives containing asbestos materials); *Seaman v. A.P. Green Indus., Inc.,* 184 Misc.2d 603, 707 N.Y.S.2d 299 (Sup.Ct.2000) (Boiler Inspection Act preempts claims made by employees against manufacturers of train components containing asbestos); *Key v. Norfolk Southern Ry. Co.,* 228 Ga.App. 305, 491 S.E.2d 511 (1997) (Boiler Inspection Act preempts common law claims against railroad by employee injured in fall from locomotive steps); *Springston v. Consolidated Rail Corp.,* 130 F.3d 241 (6th Cir.1997) (Boiler Inspection Act preempts state-law negligence claims for inadequate warning devices on locomotive in action brought by motorist struck by train); *First Security Bank v. Union Pacific R. Co.,* 152 F.3d 877 (8th Cir.1998); *Oglesby v. Delaware & Hudson Ry.,* 180 F.3d 458 (2d Cir. 1999) (Boiler Inspection Act preempts employee common law claims against locomotive seat manufacturer); *Forrester v. American Dieselelectric, Inc.,* 255 F.3d 1205 (9th Cir.2001) (Boiler Inspection Act preempts non-employee product-liability actions against a manufacturer of locomotive cranes); *In re: Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993,* 188 F.Supp.2d 1341 (S.D.Ala.1999) (Boiler Inspection Act preempts passenger and employee common-law negligence and design-defect claims

against Amtrak); *Roth v. I & M Rail Link, L.L.C.,* 179 F.Supp.2d 1054 (S.D.Iowa 2001) (Boiler Inspection Act preempts state common-law tort claims against manufacturer of locomotive cab in action brought by widow of employee crushed in collision); *Bell v. Illinois Central R.R.,* 236 F.Supp.2d 882 (N.D.Ill.2001) (Boiler Inspection Act preempts passengers' state law claims against locomotive manufacturer); *but c.f., Engvall v. Soo Line Railroad Co.,* 632 N.W.2d 560 (Minn.2001) (Boiler Inspection Act does *not* preempt state common law actions based upon a violation of the Act, thus a railroad may bring a state law contribution claim against a manufacturer of a railroad locomotive).

██ In light of this substantial authority, and in spite of plaintiffs' able arguments encouraging us to swim against this tide, we must answer the third certified question in the affirmative. We hold that state tort law claims against manufacturers of parts or components of railroad locomotives are preempted by federal law under the Locomotive Boiler Inspection Act, 49 U.S.C. § 20701, *et seq.*[3] Because we hold that this statute preempts the plaintiffs' claims against the defendants, we need not reach the other questions presented to us, and decline to answer them. *See, Alexander v. State Automobile Mutual Insurance Co.,* 187 W.Va. 72, 415 S.E.2d 618 (1992); *American Barge Line Co. v. Koontz,* 136 W.Va. 747, 68 S.E.2d 56 (1951), *overruled on other grounds by Western Maryland Ry. v. Goodwin,* 167 W.Va. 804, 816, 282 S.E.2d 240, 248 (1981). Moreover, we believe that the federal government's longstanding and pervasive interest in the oversight of railroads is unique, thus our

limited holding in this case is unlikely to have broad application to other areas where state and federal law might overlap.[4]

## IV.

## CONCLUSION

For the reasons stated, the third certified question is answered in the affirmative. Because this response makes answering the other two questions unnecessary, we decline to answer them.

Certified question answered.

Justice DAVIS, deeming herself disqualified, did not participate in the decision in this case.

Judge ROBERT STONE, sitting by temporary assignment.

---

**3.** Although we have referred to the Act as the "Boiler Inspection Act" in the text of this opinion, in order to remain consistent with the language used in the certified question, we use "Locomotive Boiler Inspection Act" in our holding and syllabus point.

**4.** We do find persuasive plaintiffs' argument that the Supreme Court has narrowed the scope of federal preemption in several recent cases:

[Preemption] [s]hould not be judged on the basis that the Federal Government has so completely occupied the field … that state remedies are foreclosed but on whether there is an irreconcilable conflict between the federal and state standards or whether the imposition of a

state standard in a damages action would frustrate the objectives of federal law.

*Silkwood v. Kerr–McGee Group,* 464 U.S. 238, 256, 104 S.Ct. 615, 626, 78 L.Ed.2d 443, 458 (1984). *See also, Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *Sprietsma v. Mercury Marine,* 537 U.S. 51, 123 S.Ct. 518, 154 L.Ed.2d 466, (2002). We fully agree that "Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700, 715 (1996). We are simply persuaded by the voluminous foreign precedent on this specific question that we must find preemption in this case.