DARBY, APPELLANT, *v.* A–BEST PRODUCTS COMPANY ET AL.; VIAD CORPORATION ET AL., APPELLEES.

[Cite as *Darby v. A–Best Products Co.,* 102 Ohio St.3d 410, 2004-Ohio-3720.]

(No. 2003–0300—Submitted December 3, 2003—Decided July 28, 2004.)

**MOYER, C.J.**

{¶ 1} Forest L. Darby, appellant, along with multiple other plaintiffs, filed a complaint in the Cuyahoga County Court of Common Pleas against nearly 60 named defendants and against additional defendants identified only as "John Does 1–100, Manufacturers, Sellers or Installers of Asbestos–Containing Products." Although the claims of the plaintiffs were filed in a single "master consolidated complaint," each plaintiff's action proceeded under a separate case number. Darby and the other plaintiffs alleged that they had been exposed to asbestos during their employment in Ohio, causing them to contract asbestos-related diseases. They asserted that the defendants had produced, sold, or otherwise put into the stream of interstate commerce asbestos and asbestos-containing materials. The plaintiffs sought punitive damages and damages based on multiple state-law theories of recovery.[1]

{¶ 2} Nearly two years after the filing of the complaint, Darby and numerous other plaintiffs (collectively, "Darby") moved to amend the complaint pursuant to Civ.R. 15(A)[2] and 20(A)[3] to add 11 new party-defendants, among them Viad Corporation, Vapor Corporation, and Baldwin–Lima–Hamilton, Inc. ("BLH"). Viad, BLH's alleged successor-in-interest, filed a memorandum in opposition to the motion. Vapor did not appear. No previously named defendant opposed the motion.

---

1. Darby alleged that the defendants (1) breached their implied warranty of good and merchantable quality and fitness for the particular intended use, (2) manufactured and sold defective and unreasonably dangerous products, and (3) did not give adequate warning about the products' dangers. Darby further asserted a claim of enterprise liability, alleging that the defendants represent a substantial share of the asbestos-containing product market, and claiming that the defendants are severally liable to the plaintiffs based upon their pro rata market share within the market.

2. Civ.R. 15(A) provides, "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires."

3. Civ.R. 20(A) provides, "All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or succession or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

{¶ 3} The trial court held an oral hearing on Darby's motion to amend and add party-defendants and permitted counsel for Viad to participate. Counsel for both Darby and Viad agreed that Darby was representative of approximately 2,000 plaintiffs in similar suits pending in the trial court. Darby's counsel further asserted, without producing evidence, that these plaintiffs had been railroad employees, the vast majority working in railroad repair shops and in locomotives, cars, and cabooses of trains that contained asbestos. Counsel for Viad represented, again without proof, that BLH was a "long defunct corporation" that had manufactured locomotives until the mid–1950s, and that Viad is the alleged successor-in-interest to BLH. It argued that the Federal Locomotive Boiler Inspection Act, Section 20701 et seq., Title 49, U.S.Code (BIA), preempted the plaintiffs' state-law tort claims against it and that Darby's motion to add Viad as a defendant should therefore be denied because "there is no possibility, statutory or common law, that plaintiffs could allege a valid cause of action, a cause of action that could withstand attack as a matter of law against these defendants."

{¶ 4} The trial court overruled Darby's motion for leave to add Viad, Vapor, and BLH as new party-defendants without opinion but granted leave to add the remaining entities named in Darby's motion. In its order, the court expressly determined that there was no just reason for delay.

{¶ 5} Darby appealed, presenting a single assignment of error in the court of appeals. He claimed that the trial court had erred in denying his motion to amend and add new party-defendants "because the Locomotive Boiler Inspection Act, Title 49 of the United States Code, Section 20701 et seq., does not pre-empt plaintiff's state law claims."

{¶ 6} Subsequently another company, Old Orchard Industrial Corporation, appeared for the first time when it filed a brief purportedly as a defendant-appellee. It described itself as the successor-in-interest to Vapor Corporation and argued that the court of appeals should affirm the trial court's order refusing to allow the addition of the three new party-defendants.

{¶ 7} The court of appeals affirmed the trial court's denial of leave to amend the complaint to add the three new parties. It concluded that Darby's state-law claims against Viad, BLH, and Old Orchard (purportedly the successor to Vapor) were barred because "the BIA completely preempted state law on requirements imposed upon locomotive parts, or materials used in such parts."

{¶ 8} This cause is now before this court upon the acceptance of a discretionary appeal. We are called upon to resolve a single issue—did the court of appeals err in affirming the interlocutory decision of the trial court refusing to allow the addition of Viad, BLH, and Vapor as new party-defendants? We hold that the court of appeals did not err.

# I

## Procedural Considerations

{¶ 9} Before considering the parties' arguments concerning the federal preemption doctrine, we review the procedural posture of this case to determine whether that substantive legal issue is properly before us.

{¶ 10} Darby grounded his motion to add new party-defendants on Civ.R. 15 and 20[4] even though Civ.R. 21 expressly governs initial nonjoinder and subsequent addition of parties. It provides: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Civ.R. 21 requires a plaintiff to receive leave of court, while Civ.R. 15(A) requires such leave once a responsive pleading has been served.

{¶ 11} In federal practice, plaintiffs have, however, successfully invoked Fed. R.Civ.P. 15 not only to add new claims against existing parties, but also, as here, to add completely new parties. 2 Moore, Vestal & Kurland, Moore's Manual: Federal Practice and Procedure (2001) 14–52, Section 14.41[2]. Federal courts have recognized that a trial court has broad discretion to grant leave to add or dismiss parties whether proceeding under either Fed.R.Civ.P. 15 or 21. In either case, the court's decision should be guided by principles of fundamental fairness and judicial efficiency as well as by related considerations of timeliness and prejudice. Moore, id. at 14–46, Section 14.26[1][b] (in ruling upon a motion for joinder by amendment of the complaint pursuant to Fed.R.Civ.P. 15, "the court will deny joinder that might have been proper in the original complaint if the plaintiff has delayed excessively in making a motion for the new joinder, or if the joinder would prejudice the interests of an existing party"); id. at 14–52.1, Section 14.42 (Fed.R.Civ.P. 21 "has been held to provide the trial court with considerable discretion in determining whether to add or dismiss parties, or to order severance. While each case must be addressed on its particular facts and circumstances, the court in exercising its discretion must consider principles of fundamental fairness and judicial efficiency"). See, also, *Health Research Group v. Kennedy* (D.D.C.1979), 82 F.R.D. 21, 29.

{¶ 12} Similarly, Ohio courts of appeals have recognized that the decision to add or drop a party pursuant to Civ.R. 21 is within the discretion of the trial court. *Bill Gates Custom Towing, Inc. v. Branch Motor Express Co.* (1981), 1 Ohio App.3d 149, 150, 1 OBR 460, 440 N.E.2d 61; *Picciuto v. Lucas Cty. Bd. of Commrs.* (1990), 69 Ohio App.3d 789, 797, 591 N.E.2d 1287. We today hold that

---

4. Counsel for Darby did, however, represent at the oral hearing held on his motion that he sought to amend the complaint to add new parties "based on the Civil Rules, Rule 15 *and 21,* in addition to Rule 20." (Emphasis added.)

review of a trial court decision on a motion seeking leave to add new parties, whether filed pursuant to Civ.R. 15 or 21, is subject to an abuse-of-discretion standard of review.

{¶ 13} "Abuse of discretion" connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556, ¶ 5, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Accordingly, the decision of the trial court denying leave to add Viad, BLH, and Vapor as party-defendants may be reversed only if Darby can demonstrate that the trial court's decision was unreasonable, arbitrary, or unconscionable.

{¶ 14} Darby argues that the proposed new party-defendants' assertion of a federal preemption bar to recovery is legally unfounded. He seeks reversal of the trial court's decision based solely on his disagreement with the proposed defendants' substantive legal assertion that they have an unassailable defense to the claims Darby proposes to make against them.

{¶ 15} In *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 573 N.E.2d 622, we held that a trial court does not abuse its discretion by refusing to allow amendment of a complaint to add new *claims* against *existing* parties where a plaintiff is unable to make a prima facie showing of support for the new matters sought to be pleaded. Id. at syllabus. In interpreting the federal counterpart to Civ.R. 21, however, it has been held that a court should not consider the merits of the claim or defense of the person to be added in deciding a motion to join parties. 7 Wright, Miller & Kane, Federal Practice and Procedure (2001) 483, Section 1683, citing, e.g., *Stanley Works v. Haeger Potteries, Inc.* (D.C.Ill.1964), 35 F.R.D. 551. We have not previously considered this issue. Nevertheless, both federal and Ohio courts have denied joinder of new parties if the applicable statute of limitations has expired with respect to the parties to be joined. *Copsey v. Swearingen* (C.A.5, 1994), 36 F.3d 1336, 1348; *Picciuto v. Lucas Cty. Bd. of Commrs.*, 69 Ohio App.3d at 797–800, 591 N.E.2d 1287.

{¶ 16} We acknowledge that a trial court has discretion in ruling upon a motion for leave to add new parties. We believe, however, that, in most cases, the merit of substantive legal defenses that may be asserted by potential parties, as opposed to existing parties, are better resolved after a decision to grant leave to add new parties has been made independently. Unless it is apparent on the face of the pleadings that all claims against the proposed defendant are wholly futile, the better practice is for the trial court to rule on a motion to add parties based on traditional grounds, including timeliness and prejudice to existing parties, independent of the merits of substantive legal defenses that a proposed defendant

may have. If leave is granted, properly served new defendants will then have the opportunity to appear and assert their substantive defenses through established procedures, i.e., an answer filed pursuant to Civ.R. 12(A) or a motion to dismiss pursuant to Civ.R. 12(B). Cf. *Wolfson v. Lewis* (E.D.Pa.1996), 168 F.R.D. 530; *Expoconsul Internatl., Inc. v. A/E Sys., Inc.* (S.D.N.Y.1993), 145 F.R.D. 336.

{¶ 17} Had such a procedure been followed in this case, and assuming that the trial court had granted Darby's motion to add Viad, BLH, and Vapor, those new defendants would have been in the same position as if they had been joined initially. Assuming proper service of summons and the complaint, they would have had full opportunity to file a responsive pleading in the form of either an answer or a motion seeking dismissal of the complaint pursuant to Civ.R. 12. Had they chosen to file a Civ.R. 12(B)(6) motion, the trial court could have accepted evidence and considered the motion under the summary-judgment standards of Civ.R. 56, thereby allowing the development of a factual record. See *Petrey v. Simon* (1983), 4 Ohio St.3d 154, 4 OBR 396, 447 N.E.2d 1285.

{¶ 18} Instead, in the instant cause we have a record of "facts" that were never formally pleaded and are supported solely by the representations of counsel. We have litigants (one of whom appeared first in the court of appeals and two of whom appear to be defunct corporate entities) purporting to be appellees although they have never been properly served or recognized as parties in the cause before us.

{¶ 19} Darby argues that the trial court in effect treated the appellees' memorandum in opposition to his motion to add new parties as a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. In so doing, Darby implies that a nonparty to an action has standing to file such a motion. We are aware of no authority or precedent for such a premise. Moreover, such an approach inappropriately encourages trial courts to bypass the traditional criteria by which a motion to add parties should be judged.

{¶ 20} In considering a plaintiff's request for leave to amend, "a trial court's 'primary consideration is whether there is actual prejudice to the defendants because of the delay.'" *Helman v. EPL Prolong, Inc.* (2000), 139 Ohio App.3d 231, 251, 743 N.E.2d 484, citing *Schweizer v. Riverside Methodist Hosp.* (1996), 108 Ohio App.3d 539, 546, 671 N.E.2d 312. Although we have held in a case involving the assertion of a new claim against an existing defendant that the plaintiff must make "'at least a prima facie showing [of] support for the new matters sought to be pleaded,'" that consideration is meant to aid in determining whether the amendment is "'simply a delaying tactic, [or] one which would cause prejudice to the defendant.'" *Wilmington Steel Products,* 60 Ohio St.3d at 122, 573 N.E.2d 622, quoting *Solowitch v. Bennett* (1982), 8 Ohio App.3d 115, 117, 8 OBR 169, 456 N.E.2d 562. Indeed one federal court has refused to allow a

proposed new party, yet unserved, to appear at all, even as an amicus, in opposition to a motion to add it as a party-defendant in an existing action. *Paradigm Ins. Co. v. Walters Diving & Marine, Inc.* (E.D.La.1999), No. 98–1617, 1999 WL 232669. See, also, *In re Everfresh Beverages, Inc.* (1999), 238 B.R. 558, 569, fn. 8 (observing in ruling on a motion to add additional defendants pursuant to Fed.R.Civ.P. 15(a) that "[t]he Proposed Additional Defendants' rights, including objecting to the Plaintiffs' complaint on the ground of timeliness" were not before the court).

{¶ 21} In arguing only the legal merits of the proposed defendants' substantive federal preemption defense, Darby implies that, if he is correct that federal preemption does not bar his state-law claims, the trial court had no choice, in the exercise of a sound discretion, but to grant him leave to add these parties. The flaw in that implication is that the trial court might well have agreed with Darby that the preemption defense had no merit, but nevertheless denied leave based on traditional rationales for refusing to add new parties, e.g., untimeliness, prejudice to existing parties, or bad faith on the part of the movant. As in any appeal challenging the exercise of trial court discretion, it is the burden of the party asserting abuse of discretion, here Darby, to affirmatively identify it. Thus, assuming, arguendo, that Darby is legally correct on the merits of the federal preemption issue, we could nevertheless dismiss this appeal based on Darby's failure to identify a reversible abuse of discretion by the trial court.

{¶ 22} Nevertheless, in the case at bar, no existing defendant objected to Darby's request to add parties. The proposed new defendants who did appear, with the permission of the court, in opposition to the motion objected to their addition as parties based solely on the federal preemption doctrine. In addition, the trial court allowed the addition of eight other proposed defendants who did *not* assert a federal preemption defense, and all of the litigants at this stage have affirmatively represented to us that the trial court had no justification for refusing to add the new parties as defendants other than the applicability of a valid federal preemption defense.

{¶ 23} On this record we see no justification for the trial court's decision to discriminate between the other entities enumerated in Darby's motion, which it added as parties, and Viad, BLH, and Vapor, which it did not, other than the conclusion that Darby could not overcome a federal preemption defense asserted by those three entities. In view of this circumstance, we will proceed to resolve the substantive legal issue presented to us. In doing so, we assume the unchallenged representations of fact made by counsel to be true. That is, we accept as fact that Darby and the other plaintiffs joining in his motion were exposed to asbestos either within railroad equipment manufactured by the proposed party-defendants or while working on that equipment in repair and

maintenance facilities. We further accept as true that Viad, BLH, and Vapor were manufacturers or suppliers of locomotive products containing asbestos to which Darby was exposed.

## II

### Federal Preemption

{¶ 24} The substantive legal issue presented is whether Darby's state-law tort claims are preempted by the BIA. We agree with the court of appeals that Darby's claims are preempted by this federal law.

{¶ 25} The Supremacy Clause of the United States Constitution provides that "the Laws of the United States * * * shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Clause 2, Article VI, United States Constitution. Consistent with precedent established by the Supreme Court of the United States, this court has long recognized that the Supremacy Clause allows Congress to deprive the states of power to regulate in a field of commerce that Congress intended to occupy exclusively, a principle commonly designated the federal preemption doctrine. See *Jones Metal Products Co. v. Walker* (1972), 29 Ohio St.2d 173, 176–177, 58 O.O.2d 393, 281 N.E.2d 1, citing *Florida Lime & Avocado Growers, Inc. v. Paul* (1963), 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248.

{¶ 26} In the past, we have resolved numerous cases in which it was argued that the federal preemption doctrine invalidated state regulations, including cases in which it was argued that the doctrine precluded courts from providing state common-law tort remedies to plaintiffs.[5] In some cases, we have determined that federal law invalidates Ohio law. See, e.g., *J.A. Croson Co. v. J.A. Guy, Inc.* (1998), 81 Ohio St.3d 346, 691 N.E.2d 655 (unanimously finding that an Ohio prevailing wage statute and regulation were preempted by the National Labor Relations Act, Section 151 et seq., Title 29 U.S.Code, to the extent that they interfered with federal job-targeting programs). In other cases we have found that the federal preemption doctrine does not invalidate Ohio law. See, e.g., *Pinchot v. Charter One Bank, F.S.B.*, 99 Ohio St.3d 390, 2003-Ohio-4122, 792 N.E.2d 1105 (unanimously finding that federal regulations enacted to implement the Home Owners' Loan Act, Section 1461 et seq., Title 12, U.S.Code, did not

---

5. See, e.g., *Statler v. Internatl. Bhd. of Elec. Workers Loc. Union No. 71* (1977), 51 Ohio St.2d 36, 5 O.O.3d 20, 364 N.E.2d 874; *Ohio Dept. of Energy v. Columbia Gas Transm. Corp.* (1979), 60 Ohio St.2d 21, 14 O.O.3d 167, 396 N.E.2d 748; *In re Miamisburg Train Derailment Litigation* (1994), 68 Ohio St.3d 255, 626 N.E.2d 85; *Minton v. Honda of Am. Mfg., Inc.* (1997), 80 Ohio St.3d 62, 684 N.E.2d 648, abrogated in part by *Geier v. Am. Honda Motor Co., Inc.* (2000), 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914; *Pinchot v. Charter One Bank, F.S.B.* (2003), 99 Ohio St.3d 390, 792 N.E.2d 1105.

preempt a state law providing a $250 civil damage award for failure to record satisfaction of a residential mortgage within 90 days of payment).

{¶ 27} It is unnecessary to survey the law of federal preemption in depth, as we have done so previously. See, e.g., *Minton v. Honda of Am. Mfg., Inc.* (1997), 80 Ohio St.3d 62, 684 N.E.2d 648. Instead, we reiterate the controlling principles that govern this case: (1) the critical question is whether Congress intended state law to be superseded by federal law—the historic police powers of the states are not to be superseded by federal law unless that is the clear and manifest purpose of Congress, (2) a presumption exists against preemption of state police-power regulations, and (3) federal law preempts state law where Congress has occupied the entire field, i.e., where a federal scheme of regulation is " 'sufficiently comprehensive to make reasonable the inference that Congress "left no room" for' " a claim under state law. Id. at 69–70 and 76, 684 N.E.2d 648, quoting *California Fed. S.& L. Assn. v. Guerra* (1987), 479 U.S. 272, 281, 107 S.Ct. 683, 93 L.Ed.2d 613.

{¶ 28} The BIA provides as follows:

{¶ 29} "A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances

{¶ 30} "(1) are in proper condition and safe to operate without unnecessary danger of personal injury." Section 20701, Title 49, U.S.Code.

{¶ 31} *Napier v. Atlantic Coast Line RR. Co.* (1926), 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432, is the seminal case in the area of federal preemption based on the BIA. The court there recognized that Congress indeed had manifested the intention to "occupy the entire field of regulating locomotive equipment" by delegating authority to a federal regulatory body extending "to the design, the construction, *and the material* of every part of the locomotive and tender and of all appurtenances." (Emphasis added.) Id. at 611, 47 S.Ct. 207, 71 L.E. 432. See, also, *Law v. Gen. Motors Corp.* (C.A.9, 1997), 114 F.3d 908, 910, quoting *S. Pacific Transp. Co. v. Oregon Pub. Util. Comm.* (C.A.9, 1993), 9 F.3d 807, 811 ("This broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across state lines" so that " 'locomotive companies need only concern themselves with one set of equipment regulations' ").

{¶ 32} In considering whether Darby's state-law tort claims are preempted by the BIA, the court of appeals noted that "case law is overwhelmingly supportive of an interpretation that the BIA completely preempted state law on requirements imposed upon locomotive parts, or materials used in such parts." This view is supported by the highest court of the state of West Virginia, which observed that "an overwhelming body of case law" exists supporting the conclusion that "through passage of the Boiler Inspection Act, Congress has occupied

the field of railroad safety so pervasively" as to justify a finding of preemption of that field. *In re W. Virginia Asbestos Litigation* (2003), 215 W.Va. 39, 592 S.E.2d 818, 822. Indeed, it found "any other path blocked by an avalanche of adverse authority from other jurisdictions, both state and federal." Id.

{¶ 33} The West Virginia court enumerated ten cases from multiple jurisdictions finding that the BIA preempts state common-law actions against both locomotive operators and locomotive manufacturers. Id., 215 W.Va. 39, 592 S.E.2d at 823–824. Three of those cases involved claims nearly identical to those made by Darby against manufacturers of locomotives containing asbestos materials. *Gen. Motors Corp. v. Kilgore* (Ala.2002), 853 So.2d 171; *Scheiding v. Gen. Motors Corp.* (2000), 22 Cal.4th 471, 93 Cal.Rptr.2d 342, 993 P.2d 996; *Seaman v. A.P. Green Indus., Inc.* (2000), 184 Misc.2d 603, 606, 707 N.Y.S.2d 299 (noting that "with the exception of the *Viad [Corp. v. Los Angeles Cty. Superior Court,* (1997), 55 Cal.App.4th 330, 64 Cal.Rptr.2d 136] court, every federal and state appellate court that has considered the issue has found that the BIA entirely preempts the field of locomotive safety and bars state tort claims").

{¶ 34} It is not legally significant that Darby's claims are directed against the manufacturers of locomotives as opposed to railroad companies themselves. "Imposing tort liability on railroad equipment manufacturers would * * * forc[e] them to conform to design and construction standards imposed by the states. This would transfer the regulatory locus from the Secretary of Transportation to the state courts—a result the BIA was clearly intended to foreclose." *Law,* 114 F.3d at 911–912.

{¶ 35} The Ninth Circuit concluded in *Law*: "Through the BIA, the federal government has established a comprehensive, national regime of locomotive regulation. This regime—enforced by [the Federal Employers' Liability Act, Section 51 et seq., Title 45, U.S.Code] and the threat of heavy civil penalties— preempts every state effort to establish independent standards for the design, construction and material of locomotives." (Footnote omitted.) Id. at 913.

{¶ 36} We agree, and similarly hold that Darby's claims against locomotive manufacturers are wholly futile. The Federal Locomotive Boiler Inspection Act, Section 20701 et seq., Title 49, U.S.Code, preempts state-law tort claims against the manufacturers of railroad locomotives asserting injury caused by exposure to asbestos contained in railroad locomotives.

{¶ 37} Accordingly, the trial court did not abuse its discretion in refusing to allow the addition of Viad, Vapor, and BLH as new party-defendants. We therefore affirm the judgment of the court of appeals.

Judgment affirmed.

F.E. Sweeney, Lundberg Stratton, O'Connor and Young, JJ., concur.

Resnick, J., dissents.

Pfeifer, J., dissents.

Frederick N. Young, J., of the Second Appellate District, sitting for O'Donnell, J.

_____

**Pfeifer, J., dissenting.**

{¶ 38} *Napier v. Atlantic Coast Line RR. Co.* (1926), 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432, concerned Georgia and Wisconsin statutes that required, respectively, firebox doors and cab curtains in locomotives. As such, those statutes were directly at odds with the authority Congress delegated to federal agencies under the Locomotive Boiler Inspection Act, Section 20701 et seq., Title 49, U.S.Code, over the design, construction, and material of every part of the locomotive and tender and all appurtenances. Had the court allowed states to impose their own safety regulations as to locomotives, travel on the nation's railways might have been disrupted due to differing regulations. Clearly, the Congress enacted the BIA to achieve uniformity, and it drew upon its powers enumerated in the Commerce Clause to do so.

{¶ 39} This case is not *Napier*. Here, we are not dealing with legislative regulation of specific equipment. We are dealing with tort liability for injuries allegedly caused by a product that is no longer in use. The effect on interstate commerce is nil. The "runaway train" theory of the effects of state regulation— "If each state were to adopt different liability-triggering standards, manufacturers would have to sell locomotives and cars whose equipment could be changed as they crossed state lines, or adhere to the standard set by the most stringent state," *Law v. Gen. Motors Corp.* (C.A.9, 1997), 114 F.3d 908, 910–911—is not at issue. The industry itself has moved away from asbestos. The Federal Railroad Administration reported in a 1996 report that "friable asbestos has not been used as a material in the construction of locomotives for ten years or more." The FRA further reported:

{¶ 40} "Locomotive builders are careful to avoid the use of asbestos in new and rebuilt locomotives. Asbestos remaining in older units is believed to be encapsulated in individual components or systems. FRA could find no evidence of asbestos being a health problem for crews of older locomotives." FRA, Report to Congress, Locomotive Crashworthiness and Cab Working Conditions (Sept. 1996), at 12–9.

{¶ 41} Since plaintiffs' tort action for injuries allegedly caused by asbestos exposure would have no effect on the design, construction, or material of locomotives now in use, there is no danger of state common law intruding into the

federal domain. The preemption doctrine exists to protect the federal government's niche, not to protect a certain industry from the common law of states.

---

Kelley & Ferraro, L.L.P., Michael V. Kelley and Anthony Gallucci, for appellant.

Ulmer & Berne, L.L.P., Bruce P. Mandel and Timothy M. Fox; Mound, Cotton, Wollan & Greengrass, Daniel Markewich and Ellen G. Margolis, for appellee Viad Corp.

Ulmer & Berne, L.L.P., Bruce P. Mandel and Timothy M. Fox; Baker, Lancianese & Conaty and Jon B. Orndorff, for appellee Old Orchard Industrial Corp., individually and as successor-in-interest to Vapor Corp.

Roetzell & Andress, Susan S. Box and Stephen D. Jones, urging affirmance for amicus curiae General Motors Corp.