[Cite as *State v. Heiney*, 2020-Ohio-2761.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

Court of Appeals No. L-19-1115

    Appellee

Trial Court No. CR0201502287

v.

Jake P. Heiney

**DECISION AND JUDGMENT**

    Appellant

Decided: May 1, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

William V. Stephenson and Michael H. Stahl, for appellant.

* * * * *

**OSOWIK, J.**

**Introduction**

{¶ 1} The defendant-appellant, Jake Paul Heiney, appeals a May 1, 2019

judgment of the Lucas County Court of Common Pleas that dismissed his petition for

postconviction relief, following his conviction on two counts of gross sexual imposition

and one count of tampering with records.  Heiney argued that he received ineffective assistance of trial counsel for counsel's failure to request a continuance of the trial date and for counsel's failure to secure a medical expert.  For the following reasons, we affirm the trial court's decision to dismiss the petition.

## Background

{¶ 2} Heiney is an orthopedic surgeon who ran his own medical practice.  In the criminal case against him, the state alleged that Heiney touched two female patients inappropriately while examining them in 2015.  The state also alleged that Heiney altered electronic medical records "in an attempt to provide a medical rationale for his groping [one of the patient's] breasts and buttocks."

{¶ 3} Following a jury trial that began on February 17, 2016, Heiney was convicted of two counts of gross sexual imposition ("GSI"), in violation of R.C. 2907.05(A)(1) and (C), felonies of the fourth degree, and one count of tampering with records, in violation of R.C. 2913.42(A)(1) and (B)(1)(2)(a), a misdemeanor of the first degree.  The trial court sentenced Heiney to serve 180 days in jail, 90 days in the county work release program, fined him $5,000 and designated him a Tier 1 sex offender. Heiney appealed and raised 11 assignments of error for our review.  On August 24, 2018, we affirmed the judgment "in full," and the Ohio Supreme Court declined further review. *State v. Heiney*, 6th Dist. Lucas No. L-16-1042, 2018-Ohio-3408, ¶ 181, *discretionary rev. denied,* 2018-Ohio-5209.  Heiney's petition for a writ of certiorari was denied by the United States Supreme Court.  *Heiney v. Ohio*, 140 S.Ct. 108, 205 L.Ed.2d 40 (2019).

2.

{¶ 4} Our decision in *Heiney* contains a detailed recitation of the evidence presented at trial, and the following is a summary of that evidence that is germane to the instant petition.

**Trial Summary**

{¶ 5} The two victims in this case were identified as M.S. and K.O. M.S. sought treatment with Heiney for pain that was confined to her left shoulder. During M.S.'s last appointment, Heiney asked for, and M.S. consented to, Heiney performing a "breast exam." Heiney pulled the cup of her bra down, exposing her breast and then "pushed" and "squeezed" her breast between his fingers. Heiney also gave M.S. an injection in her shoulder. In preparation for that injection, Heiney pulled the cup of her bra away from her body and placed a piece of gauze "deep inside the bra under [her] breast." No one else was present in the exam room at the time, and M.S. did not recall that Heiney wore gloves. M.S. did not return to Heiney after the appointment and instead began treating with Charles Foetisch, M.D., also an orthopedic surgeon.

{¶ 6} K.O. sought treatment with Heiney on one occasion for left shoulder, low back, and radiating hip pain. Heiney performed three "breast exams" on K.O. that were similar to that described by M.S. When Heiney examined K.O.'s low back, he asked K.O. to turn around and touch her toes. He then "grabbed [her] pants and * * * underwear and pulled them down to right above [her] knees, and then started to feel around on [her] behind, * * * side and * * * upper thigh region where his fingers kind of brushed against [her] private area." Heiney was not wearing gloves at the time, and no

3.

one else was present in the exam room. K.O. reported Heiney's conduct to the police. She also obtained a copy of her medical records from Heiney's office and gave them to the police.

{¶ 7} Heiney was interviewed by police with respect to K.O.'s complaint. Within hours after the interview, Heiney viewed and printed K.O.'s electronic medical record. The next day, Heiney gave his medical assistant his handwritten notes and asked the assistant to create an addendum to the original record. Although modified, the original electronic record remained in the system.

{¶ 8} Three weeks before trial, Heiney identified Serge Kaska, M.D., as a "potential expert" and sought leave to file his expert report, which the trial court granted. According to his report, Dr. Kaska is an expert in orthopedic medicine, and he would have testified as to "proper physical examination techniques * * * to rebut the testimony of [the state's expert], Dr. Christopher Foetisch." The defense did not call Dr. Kaska to testify at trial or any other expert.

{¶ 9} Dr. Foetisch testified as a lay witness (as M.S.'s treating physician) and as an expert witness (in orthopedic medicine). Foetisch testified that he follows "generally recommended" exam guidelines set forth by the American Medical Association ("AMA") by, for example, always having a third person in the room when he examines a patient. As a practicing orthopedic surgeon, Foetisch has never found it medically necessary to give a patient a breast exam, place gauze in the bra of a patient who is receiving a shoulder injection, or remove a patient's underwear during an examination.

4.

**Summary of Heiney's Petition for Postconviction Relief**

{¶ 10} On December 14, 2018, Heiney filed a "First Amended Petition for Post-Conviction Relief," with leave of court. First, Heiney speculates that Dr. Kaska "refused to testify on the advice of his counsel" because he was facing "serious charges by the California Medical Board." Emails attached to the petition, however, point to other, plausible reason that Dr. Kaska was not called as a witness. For example, one email indicates that Dr. Kaska refused to testify because he did not support Heiney's examination methods. Another email indicates that the defense decided against hiring an expert, opting instead to rely solely on cross-examining Dr. Foetisch.

{¶ 11} Irrespective of the reason for Dr. Kaska's absence, Heiney claims that he was denied effective assistance of counsel when counsel failed to seek a continuance of the trial date (for the purpose of replacing Dr. Kaska) and when counsel failed to consult with "other available potential experts." In support of his claims, Heiney attached affidavits from two physicians. In the first, Robert Corn, M.D., who is board certified in orthopedic surgery, asserts that he was contacted by Heiney's trial counsel before trial and "was willing to review documents and testify at trial," but "[w]ithout explanation, [he] was not retained or contacted by them subsequently." (*See* Corn Affidavit at ¶ 12-13, 23(a)). Roland Tindle, D.O. is board certified in emergency medicine and also provided an affidavit.

{¶ 12} Drs. Corn and Tindle offered similar expert opinions regarding "appropriate examination and records maintenance procedures," based upon their

respective review of the record in this case. A summary of their affidavit testimony is set forth below:

Although the AMA sets forth guidelines as to how to examine a patient, those guidelines are mere suggestions. "Wrong-doing" should not inferred by a physician who employs a different examination process. Just because Dr. Foetisch followed AMA guidelines when he examined patients does not mean that "Dr. [Foetisch's] techniques should [] be used to determine if Dr. Heiney's techniques were criminal in nature." (*See* Corn Aff. at ¶ 23(b)-(c) and Tindle Aff. at ¶ 13(a)-(c)).

Manipulating (or moving) a patient's clothing, as Dr. Heiney was alleged to have done when examining M.S. and K.O., is normal. (*See* Corn Aff. at ¶ 23(e) and Tindle Aff. at ¶ 13(e)).

Privacy concerns, mandated by the Health Insurance Portability and Accountability Act ("HIPAA"), require medical providers to close the door to an examination room while a patient is undergoing a physical examination. (*See* Corn Aff. at ¶ 23(d) and Tindle Aff. at ¶ 17).

Neither Dr. Corn nor Dr. Tindle "would * * * conduct [an] examination and/or [administer] treatment as Dr. Heiney conducted his." Nonetheless, both opined that "from a medical perspective * * * [Dr. Heiney's] examination procedures could [not] reasonably be construed [to

have been motivated by] sexual gratification nor [were they] criminal" in nature. (*See* Corn Aff. at ¶ 23(f) and Tindle Aff. at ¶ 19).

It is neither improper nor illegal for a physician to alter a medical record so long as the original medical record remains unchanged. (*See* Corn Affidavit at ¶ 23(h) and Tindle Aff. at ¶ 13(h)).

{¶ 13} Heiney also attached an affidavit from Scott Coon, who is a criminal defense attorney and former prosecutor. Based upon his review of the record, Coon opined that it was a "critical failure" for Heiney's trial counsel to fail to "secure and provide expert testimony to address the medical necessity of [Dr. Heiney's examination technique] * * *" and to refute "the state's argument that Heiney acted for the purpose of sexual gratification." Coon opined further that it was deficient performance by trial counsel to fail "to request a continuance at trial to obtain an expert to testify for Dr. Heiney" and/or for failing to seek leave of court to bring in Dr. Corn to testify after Dr. Kaska became unavailable. Coon claims that Dr. Foetisch's testimony—that he did not use Dr. Heiney's techniques or procedures—presented a "false narrative that Dr. Heiney's techniques were not medically acceptable [which] was not curable by relying simply on cross-examination."

{¶ 14} The state filed a motion to dismiss Heiney's PCR petition. On May 1, 2019, the trial court granted the state's motion, finding that Heiney's petition was barred by res judicata. The court reasoned that "[e]ven if it is assumed that [Heiney's] evidentiary documents are credible and admissible, they still do not contain information

7.

that is de hors the record.  Rather, as their contents are simply alternative trial strategy and [contain] contradictory information, [Heiney] has failed to establish any basis for relief not barred by res judicata."

{¶ 15} Heiney appealed and raises a single assignment of error for our review.

**Assignment of Error**:  It was contrary to law and an abuse of discretion for the trial court to deny Dr. Heiney's petition for post-conviction relief without a hearing because competent, relevant, material evidence *dehors* the trial court record was presented which could not have been fairly been [sic] presented in any other proceeding and which established that Heiney had in fact been denied effective assistance of counsel under both the Ohio and federal constitutions.  Appendix at A(a)1.

**Postconviction Relief Standard of Review**

{¶ 16} The postconviction relief process is a collateral civil attack on a criminal judgment, rather than an appeal of the judgment.  *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999).  The postconviction relief proceeding is designed to determine whether "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States."  R.C. 2953.21(A)(1)(a).  Postconviction review is not a constitutional right.  Rather, it is a narrow remedy that gives the petitioner no more rights than those granted by statute.  *Id.*  It is a means to resolve constitutional claims that would otherwise

8.

be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. *State v. Zich*, 6th Dist. Lucas No. L-15-1263, 2017-Ohio-414, ¶ 9.

{¶ 17} "[A] trial court's decision granting or denying a postconviction relief petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 58. "Abuse of discretion" connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Darby v. A-Best Prod. Co.,* 102 Ohio St.3d 410, 2004-Ohio-3720, 811 N.E.2d 1117, ¶ 13.

{¶ 18} A criminal defendant seeking to challenge a conviction through a petition for postconviction relief is not automatically entitled to an evidentiary hearing. *Calhoun* at 282, citing *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982). Before granting an evidentiary hearing, the trial court must determine whether substantive grounds for relief exist. R.C. 2953.21(D). In making such a determination, the court shall consider the petition, supporting affidavits, documentary evidence, and all the files and records from the case. *Calhoun* at 284.

{¶ 19} "Substantive grounds for relief exist and a hearing is warranted if the petitioner produces sufficient credible evidence that demonstrates the petitioner suffered a violation of the petitioner's constitutional rights." *In re B.C.S.*, 4th Dist. No. 07CA60,

9.

2008-Ohio-5771, ¶ 11. The petitioner must demonstrate that the claimed "errors resulted in prejudice." *Calhoun* at 283. A court may dismiss a petition for postconviction relief without a hearing when the petitioner fails to submit evidentiary material "demonstrat[ing] that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Id.* at paragraph two of the syllabus.

### Heiney's Petition is not Barred by Res Judicata

{¶ 20} A petition for postconviction relief may be properly dismissed without a hearing on the basis of res judicata. *Cole* at 113. Pursuant to the doctrine of res judicata:

> [A] final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus.

{¶ 21} "[R]es judicata applies to proceedings involving post-conviction relief and bars any issue that was or could have been raised at trial or on direct appeal." (Quotations omitted.) *State v. Teets*, 4th Dist. Pickaway No. 17CA21, 2018-Ohio-5019, ¶ 39. For a petitioner to avoid dismissal of their petition for postconviction relief due to

10.

res judicata, "the evidence supporting the claims in the petition must be competent, relevant, and material evidence outside the trial court record." *Id.*, citing *B.C.S.* at ¶ 14.

{¶ 22} Here, the trial court determined that res judicata barred Heiney's petition because Heiney raised ineffective assistance as an issue in his direct appeal *and* because "as early as trial and definitely by the time of the appeal, [Heiney] was aware of the circumstances" giving rise to his ineffective assistance claim and "should have raised it then." Heiney counters that he submitted competent, credible evidence dehors the record, which could not have been considered in his direct appeal and, therefore, res judicata does not apply. We agree.

{¶ 23} First, Heiney did not assert an ineffective assistance claim in his direct appeal. Even if he had, however, a PCR petition, rather than a direct appeal, is the proper vehicle to raise an ineffective assistance of counsel claim when the claim is premised on evidence outside the record. *Id.* at ¶ 40, citing *State v. Madrigal*, 87 Ohio St.3d 378, 390-91, 721 N.E.2d 52 (2000) (Observing that "[n]othing in the record indicates what kind of testimony an eyewitness identification expert could have provided. Establishing that would require proof outside the record, such as affidavits demonstrating the probable testimony. Such a claim is not appropriately considered on a direct appeal."). Thus, "even if the issue of ineffective assistance of counsel is raised on direct appeal, that issue will not be barred by res judicata in a postconviction relief proceeding if the issue could not have been determined without resort to evidence dehors the record." *State v. Walker*, 6th Dist. Lucas No. L-99-1383, 2000 WL 1878954 (Dec. 29, 2000), citing *State v. Smith*,

17 Ohio St.3d 98, 101, 477 N.E.2d 1128 (1985), fn. 1. The rationale for not applying res judicata under these circumstances was articulated by Judge Cannon in his concurring opinion in *State v. Holnapy*, 11th Dist. Lake No. 2013-L-002, 2013-Ohio-4307, ¶ 47: "To hold otherwise means that an appellant—who is unable to argue ineffective assistance of counsel at trial, unable to present evidence outside the record on direct appeal, and barred by the doctrine of res judicata from raising the issue in a petition for postconviction relief—could potentially be denied the opportunity to have his evidence reviewed at all."

{¶ 24} Merely attaching evidence dehors the record to the petition will not guarantee a PCR hearing. Rather, the evidence "must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claims beyond mere hypothesis and a desire for further discovery." *State v. Coleman*, 1st Dist. Hamilton No. C-900811, 1993 WL 74756, *7 (Mar. 17, 1993).

{¶ 25} In this case, Heiney claims that his petition is supported by "bona fide evidence dehors the record," including affidavits from "qualified medical doctors" who "spoke directly" to the elements of his ineffective assistance claim. Indeed, the evidence, which consists of three affidavits and dozens of pages in support, was not part of the trial court record. Thus, if Heiney had presented those materials in his direct appeal, the trial court could not have considered them. Moreover, the evidence arguably supports Heiney's ineffective assistance theory, i.e., that his trial counsel was ineffective for

12.

failing to call an expert to testify as to medical examination and record maintenance procedures. Because the materials could not have predicated an ineffective assistance claim in his direct appeal, res judicata does not apply to Heiney's PCR petition.

{¶ 26} Although we disagree with that part of the trial court's judgment that found res judicata applicable, we find that the court's rejection of Heiney's ineffective assistance claim to be correct on other grounds. *See, e.g., Teets* at ¶ 41 (Noting that a reviewing court "will not reverse a correct judgment merely because it is based on an erroneous rationale").

**Heiney Failed to Establish a Claim of Ineffective Assistance of Trial Counsel**

{¶ 27} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove ineffective assistance of counsel, one must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id.* at 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. When considering whether trial counsel's representation was deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Thus, "the defendant

13.

must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*; *see also State v. Bradley*, 42 Ohio St.3d 136, 144, 538 N.E.2d 373 (1989) (holding that counsel's "tactical decisions" do not "rise to the level of ineffective assistance"). Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus.

{¶ 28} Heiney alleges that the failure to call an expert witness, who could have "provided extremely powerful testimony" to counter the "logical inferences" of Dr. Foetisch's testimony—that Heiney acted with "nefarious intent"—was "most certainly the omission of an essential duty." Heiney also cites counsel's failure to seek a continuance of the trial date, once Dr. Kaska became unavailable, as further evidence of counsel's deficient performance.

{¶ 29} The decision of whether or not to call an expert is generally considered a matter of trial strategy. *Teets* at ¶ 42, citing *State v. Coleman*, 45 Ohio St.3d 298, 308, 544 N.E.2d 622 (1989). Indeed, "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993), citing *State v. Thompson*, 33 Ohio St.3d 1, 10-11, 514 N.E.2d 407 (1987) (Counsel's decision not to request the appointment of a forensic pathologist, choosing instead to rely on their cross-examination of the state's expert in order to rebut the evidence of rape did not deprive the defendant of a fair

14.

trial or create an unreliable result). *See also State v. Delawder*, 4th Dist. No. 14CA12, 2015-Ohio-1857, ¶ 34, quoting *State v. Goza*, 8th Dist. No. 89032, 2007-Ohio-6837, ¶ 58 (noting that "'[b]ecause calling witnesses is within the realm of trial tactics, defense counsel did not have a duty to call an expert witness'").

{¶ 30} The evidence attached to Heiney's petition supports the lower court's finding that trial counsel "considered using expert testimony but ultimately decided that cross-examining Dr. Foetisch was the better tactic." For example, although Heiney asserts that Dr. Corn should have been called to testify, his own evidence indicates that trial counsel specifically considered, but decided against, calling Dr. Corn. Six weeks before trial, counsel wrote, "[l]et me know if you would like me to continue speaking with [Dr. Corn] or if we'd like to use Dr. Heiney's friend [Dr. Kaska]." The state speculates that the defense likely opted against relying on Dr. Corn because he is a "well known professional witness in Ohio" and would have been easily impeached. Whatever the reason, we will not second-guess counsel's initial decision not to rely upon Dr. Corn's opinion *or* their subsequent decision not to reconsider using him, once Dr. Kaska withdrew. *Accord Teets* at ¶ 43. (Defendant failed to show that it was deficient performance rather than a strategic decision that motivated counsel not to call firearm's expert who, prior to trial, "provided counsel with his qualifications * * * [but] did receive a subpoena to testify.").

{¶ 31} The evidence also shows that, even before Dr. Kaska withdrew, trial counsel considered relying, exclusively, on cross examining Dr. Foetisch. Six weeks

15.

before trial, counsel wrote to Heiney, "we ultimately may not need an expert to testify at all if we can just blow Dr. F[oetisch] out of the water." The evidence establishes that it was a matter of trial strategy, not ineffective assistance, to proceed to trial without an expert, one that we will not second-guess on appeal.

{¶ 32} Finally, emails sent by trial counsel, after the trial, do not support Heiney's claim. In them, trial counsel wrote that they "could not find an expert to testify for [Heiney's] defense." While Heiney disputes the truthfulness of counsel's statement, even if true, an inability to produce expert testimony at the trial to rebut the state's expert testimony does not rise to ineffective assistance. *State v. Yarger*, 6th Dist. Huron No. H-97-014, 1998 WL 230648 (May 1, 1998) (Defendant failed to establish ineffective assistance where trial counsel made "numerous efforts" but was "ultimately unsuccessful" at finding an expert to assist the defense.). In short, the evidence attached to Heiney's petition establishes that trial counsel gave thoughtful consideration to the issue of whether to call an expert witness and if so, who to call. In the absence of any evidence of deficient performance with respect to the use of an expert witness, we find that the trial court did not abuse its discretion in dismissing Heiney's petition. Further, in light of our finding, it follows that counsel's decision not to seek a continuance of the trial date (for the purpose of finding an expert) also does not amount to ineffective assistance.

{¶ 33} Heiney also failed to establish prejudice resulting from trial counsel's decision to proceed to trial without an expert.

16.

**{¶ 34}** Heiney alleges that, had he presented testimony from medical experts, who would have testified that "nothing described [in this case] exceed[ed] the scope of a proper medical exam," an acquittal was "highly likely" and "all but ensure[d]."

**{¶ 35}** But, during the trial, defense counsel was allowed to publish to the jury and to question Dr. Foetisch with 17 exhibits "for the purpose of demonstrating that Heiney's examination techniques, while perhaps different from those employed by Foetisch, were in accordance with authoritative text books." *Heiney* at ¶ 87. Therefore, any testimony to that same effect, by Dr. Corn or Dr. Tindle, would have, at best, been cumulative. A court may deny a PCR hearing if it finds that the evidence relied upon by the defendant "is cumulative of, or alternative to, material presented at trial." *State v. Combs*, 100 Ohio App.3d 90, 98, 652 N.E.2d 205 (1st Dist.1994).

**{¶ 36}** In addition, the Corn and Tindle affidavits do not speak to other, arguably more damaging evidence presented at trial, from which the jury may have inferred that Heiney acted with "nefarious intent." That evidence included testimony from three witnesses, who testified pursuant to Evid.R. 404(B), regarding similar acts by Heiney, which the jury may have found probative of his intent, i.e., that when he touched M.S. and K.O., he did so for purposes of sexual gratification. The jury also heard Heiney tell the police that he follows certain procedures while examining patients and yet, the victims testified that he failed to follow those procedures (by squeezing one victim's entire breast with his bare hand, not asking permission before pulling her bra cup away and placing gauze under her exposed breast, removing the other victim's pants and

17.

underwear and fully exposing her buttocks and vagina; touching her vagina with bare hands and without any explanation or warning). Therefore, evidence relied upon by Heiney in his petition—that his physical examination processes were medically appropriate—leave undisturbed other, probative evidence that, "if believed by the jury, established that Heiney touched M.S. and K.O. for his own sexual gratification." *See Heiney,* 6th Dist. Lucas No. L-16-1042, 2018-Ohio-3408, at ¶ 94-95. Therefore, Heiney failed to show that there exists a reasonable probability that the results of the trial would have been different with the presence of additional, cumulative evidence from a medical expert. We also agree with the state that the affidavit testimony from Drs. Corn and Tindle could have supported the state's case, just as much as it supported Heiney's. Indeed, both doctors testified that they would not employ Heiney's examination methods. (Dr. Corn averred, "I would not conduct my examinations and/or treatment as Dr. Heiney conducted his." Likewise, Dr. Tindle averred, "[s]ome of the exam techniques as described by witnesses used by Dr. Heiney were not ones that I would use * * *.").

{¶ 37} Heiney also cannot show a prejudicial effect as to his tampering with records conviction. Heiney argues that Drs. Corn and Tindle's testimony—that it is "commonplace and acceptable to make additions to patient medical records, so long as a log of the additions is created, and the original document is still accessible"—would have resulted in an acquittal. We disagree. Such evidence does not address Heiney's intent when he modified K.O.'s record. As we found in his direct appeal, "[g]iven that Heiney altered the E.M.R. shortly after his police interview, we find that the jury could

18.

reasonably conclude that Heiney's purpose in doing so was to defraud—i.e., to deceitfully legitimize an otherwise unnecessary and improper touching of a patient's erogenous zone." *Heiney* at ¶ 49. The proffered testimony from a medical expert would not have altered the jury's finding with respect to Heiney's intent.

{¶ 38} For all of these reasons, we find that Heiney failed to present sufficient operative facts demonstrating a reasonable probability that the outcome of the trial, with respect to his gross sexual imposition or his tampering with records convictions, would have differed with the testimony of an expert medical witness.

## Conclusion

{¶ 39} Heiney failed to present sufficient, credible evidence demonstrating that he suffered a violation of his constitutional rights based on his trial counsel's failure to call a medical expert to testify at trial or to seek a continuance of the trial date. Therefore, Heiney's assignment of error is found not well-taken.

{¶ 40} Because Heiney's petition failed to present sufficient operative facts demonstrating his trial counsel rendered constitutionally ineffective assistance, we find no abuse of discretion in the trial court's decision denying Heiney's petition for postconviction relief without a hearing.

{¶ 41} Having found Heiney's assignment of error not well-taken, we affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.           _____
                                                   JUDGE

Arlene Singer, J.     

                                                _____

Thomas J. Osowik, J.                                         JUDGE
CONCUR.

                                                _____
                                                  JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.