[Cite as *State v. Mick*, 2022-Ohio-2378.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                    Court of Appeals No.    E-20-023
                                                                        E-20-024

        Appellee                         Trial Court No.  2014 CR 0196
                                                                        2016 CR 0335
v.

Richard C. Mick                                  **DECISION AND JUDGMENT**

        Appellant                        Decided:  July 8, 2022

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Russell V. Leffler, for appellant.

* * * * *

**ZMUDA, J.**

{¶ 1} This matter is on appeal of the October 20, 2020 judgment of the Erie County Court of Common Pleas, classifying appellant, Richard Mick, as a Tier II sexual offender and sentencing him to an aggregate prison term of life plus 3 years.  Finding no error, we affirm.

## I. Background

{¶ 2} Mick served as the pastor at the Litehouse Baptist Church in Sandusky, Ohio, from 1999 until formal charges were filed against him, resulting in Mick stepping down from his position. Each of the victims identified in the case attended Mick's church or a youth program sponsored by his church.

{¶ 3} Mick was first indicted on May 14, 2014, in case No. 2014-CR-0196. The state charged Mick with two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), a third degree felony, and two counts of rape by force in violation of R.C. 2907.02(A)(1)(b), a first degree felony. The victim of the gross sexual imposition counts was identified as L.S., a child less than 13 years old at the time of the offenses. The victim of the rape counts was identified as E.M., a child less than 10 years old at the time of the offenses.

{¶ 4} Mick initially appeared pro se, but then proceeded for more than a year with a public defender. On October 28, 2015, Mick discharged his public defender and hired a new attorney. In the year prior to Mick's first trial, his retained trial counsel filed numerous motions, seeking dismissal of the case, evidentiary rulings, a motion to recuse the trial judge, and numerous requests to reschedule or continue the scheduled jury trial. The trial court denied counsel's final motion to continue the trial date. Mick's trial counsel appeared on the date of trial, but refused to proceed, suggesting instead that the trial court could declare a mistrial because counsel was not able or willing to proceed.

2.

{¶ 5} The court proceeded to trial, admonishing Mick's counsel to participate or risk a contempt finding. Mick's counsel, however, refused to participate in voir dire of potential jurors and refused to exercise any peremptory challenges. *State v. Mick*, 2018-Ohio-999, 108 N.E.3d 1149, ¶ 8 (6th Dist.). After a jury was impaneled, new counsel entered an appearance for Mick, with Mick's approval. The jury found Mick guilty of all four counts, and the trial court sentenced Mick to an aggregate prison term of life in prison. Mick appealed and we reversed, finding Mick did not waive representation, and proceeding to trial resulted in a denial of Mick's right to counsel. *Mick I* at ¶ 25-26.

{¶ 6} On August 11, 2016, while case No. 2014-CR-196 was pending, the state indicted Mick on eight new counts of gross sexual imposition in case No. 2016-CR-0335. Counts One, Three, Five, and Seven alleged violations of R.C. 2707.05(A)(1), a felony of the fourth degree, and Counts Two, Four, Six, and Eight alleged violations of R.C. 2907.05(A)(4), a felony of the third degree. The indictment identified E.S., a child less than 13 years of age, as the victim for all counts.

{¶ 7} Following the reversal in *Mick I,* the trial court joined the two cases for Mick's second trial on July 22, 2019. During trial, the defense learned of an undisclosed supplemental police report and requested a mistrial. The state opposed a mistrial. After hearing on the motion, the trial court granted the motion but made no finding of bad faith or deliberate or intentional misconduct by the state. The trial court, instead, scheduled a pretrial to pick a new trial date and requested a visiting judge to handle all further proceedings.

3.

{¶ 8} On July 21, 2020, Mick filed a motion to dismiss the indictments in case Nos. 2014-CR-0196 and 2016-CR-0335, arguing a third trial would constitute a violation of double jeopardy protections and violate his due process rights. On September 14, 2020, the trial court denied the motion, noting the long case history and large volume of discovery, as well as the lack of any bad faith or intentional misconduct by the state to procure a mistrial.

{¶ 9} Mick's third jury trial commenced on September 21, 2020. During the jury selection phase, Mick's trial counsel permitted a retired police detective to be seated on the jury and that juror became the foreperson. In voir dire, Mick's counsel primarily focused his questioning of this juror on grand jury procedure and the lesser burden of proof for an indictment, based on the detective's experience testifying before a grand jury and working with prosecutors in presenting a case. Mick's trial counsel also used only two of his peremptory challenges during jury selection, and did not challenge this juror for cause.

{¶ 10} During trial, Mick's counsel pursued a theory of revenge, arguing Mick's ex-wife, Karen Mick, directed the victim's accusations against Mick in an attempt to hurt him. Around the time of the first allegations, Mick and Karen separated, and Karen began accusing Mick of criminal conduct that included murder, rape, and molestation. Karen had suffered a head injury in the late 80's, and her family believed this injury altered her personality and made her more paranoid and erratic, prone to believe those around her were molesters. Karen Mick eventually divorced Mick and moved out of

4.

state, but she continued to follow events in Sandusky and attempted to maintain contacts close to the investigations.

{¶ 11} The investigator in the case, Detective Ken Nixon, testified that he considered Karen Mick may have been pursuing a vendetta in his initial evaluation of the case, and he obtained phone records as part of the investigation for Karen Mick, L.S. and L.S.'s mother. He determined Karen Mick and L.S.'s mother were communicating in October, 2013, but concluded Karen Mick was asking L.S. to tell the truth about Mick. Trial counsel questioned each witness regarding Karen Mick's involvement, but no victim testified that Karen Mick influenced their testimony. L.S., E.M., and E.S. acknowledged Karen Mick attempted to reach out or befriend family members, but each indicated they had little knowledge of her efforts, disliked her and kept their distance from her, and made their own decision to disclose the abuse. Each victim gave testimony, detailing abuse at the hands of Mick.

{¶ 12} L.S. testified that, when he was 7 or 8, he had bladder control issues and sometimes had accidents while attending Sunday school. L.S. testified that, around 2013, Mick fondled him on several occasions while helping him change his soiled pants, under the guise of checking him for rashes. His mother did not regularly attend the church, but sent L.S. on the church bus or van for Sunday services. After Karen Mick contacted his mother, and his mother asked L.S. whether Mick had ever done anything inappropriate, L.S. eventually reported the incidents in 2016 after seeking counsel from a pastor at another church. That pastor also testified, and corroborated L.S.'s claim that he asked for

5.

counsel. Karen Mick and L.S.'s mother had frequent contact leading up to L.S.'s disclosure.

{¶ 13} E.M. testified that Mick raped her when she was 6 or 7 years old, and also touched her genitals through her clothing on other occasions. According to E.M.'s testimony, Mick made E.M. perform fellatio on him in his office on one occasion, and attempted to vaginally rape her just outside the church on a separate occasion, but could only insert the tip of his penis. E.M. testified that she disclosed the abuse to an assistant pastor at the church, Johnny G., but he committed suicide in the months following her disclosure. After she asked Mick to leave her alone, her family was expelled from the church. E.M. testified that in the years after the abuse, she suffered mental health issues, contemplated suicide, and engaged in self-harm. While still a minor, she eventually disclosed the sexual abuse to her boyfriend, and later met with an investigator at Erie County Children Services in 2012. E.M. began receiving therapy after meeting with Children Services, and over time, gradually provided more detail regarding the abuse. In 2016, E.M. disclosed new details of the abuse to members of B.A.A.N.C. (Bikers against Abused and Neglected Children), and B.A.A.N.C. contacted Detective Nixon.

{¶ 14} E.S. testified that he also attended Sunday school at the church. His parents were active in the church ministry, and believed E.S. would benefit from counseling with Mick to address disciplinary problems. They arranged for counseling sessions when E.S. was 8 and 9 years old. E.S. testified that Mick touched his genitals through his clothing between 5 and 15 times, and when E.S. told Mick he felt the

6.

touching was wrong, Mick "blackballed" E.S.'s family from the church. Years later, E.S. disclosed the abuse to his brother, but led his brother to believe that he had already talked with their parents. E.S.'s brother did not speak with their parents about what he was told until after E.S. spoke with a Children Services investigator, and their parents were made aware of the abuse.

{¶ 15} In addition to the victim testimony, the prosecution called Dr. Stuart Bassman, a psychologist, as an expert witness to discuss grooming and delayed disclosure by child victims. Dr. Bassman testified that, often, children do not understand what has been done to them and they lack the words to tell someone of the abuse. As they get older, they gain the understanding and the vocabulary, but because they have forced the abuse from their memory, counseling is helpful in providing the child with a safe place to remember and share their memories without fear of judgment or punishment. Dr. Bassman met with E.M. by videoconference and with E.S. by phone, and he reviewed testimony from the previous trials prior to giving his testimony. He did not testify that E.M. and E.S. had repressed and then recovered memories. Instead, he spoke of denial and pretense that the abuse never happened, helped by counseling to assist the victim in reaching into their memory so as to revisit events and remember.

{¶ 16} Mick's trial counsel questioned Dr. Bassman about the validity of repressed memories, and Dr. Bassman acknowledged that repressed memory is a controversial concept within the scientific community. He agreed that true repressed memory is very rare. Dr. Bassman also testified that a therapist can affect how a person remembers

7.

things, if – for example – the therapist uses leading questions or suggests that symptoms are consistent with sexual abuse. Dr. Bassman was not asked for and did not offer any opinion about the effect of therapy on any victim in the case.

{¶ 17} Mick presented his own witnesses, including his former sister-in-law and his daughter. His sister-in-law was estranged from her sister, Karen Mick, and testified that Mick had good character based on her infrequent contact with him over the last 10 years. She also testified that her sister was unstable and paranoid.

{¶ 18} Mick's daughter testified regarding the church's schedule and strict policies. She opined that people would have noticed if her father took a child into his office or left the building with a child, considering the policy against being alone with a child. However, she also acknowledged that she did not witness Mick's strict adherence to church policy because she was not with him at all times, and had spent much of 2008 through 2010 away at college. As to her mother, Mick's daughter testified she was abusive following her car accident until her parents separated, a period of nine years, and Mick was aware of this abuse. Counsel later recalled the daughter, who tempered this testimony by claiming Mick only became aware of the extent of the abuse after the divorce.

{¶ 19} In addition to family, Mick presented testimony from church members. They generally praised Mick's good character and reiterated the church policy regarding contact with children, indicating that policy barred even parents from being alone with

8.

their own child. Mick's counsel did not call a defense expert to challenge Dr. Bassman's testimony, relying instead on the effectiveness of his cross examination of Dr. Bassman.

{¶ 20} In closing argument, Mick's trial counsel reiterated his theme of a Karen Mick vendetta that resulted in the victim accusations in his case. He pointed out Karen Mick's accusations that Mick committed murder, operated a demonic cult, and participated in a nationwide child sex trafficking ring with other, unidentified pastors, noting police did not take her seriously. Counsel suggested that the police only investigated the claims of E.M., L.S., and E.S. because it is impolite to disbelieve a victim of sexual abuse, stating, "Let's face it, we've learned here it's literally the only, the only type of accusation you can make against a person many years later that's going to be believed automatically by law enforcement, right, with no evidence to support it." Mick's trial counsel summed up the evidence as claims without eye-witnesses, discounting the victims' testimony as the result of influence exerted by Karen Mick, the victims' parents, and the counselors or therapists that spoke with E.M. and E.S.

{¶ 21} The state countered with the corroborating evidence, including E.M.'s disclosure to Pastor Johnny G, L.S.'s disclosure to a Lutheran pastor, and E.S.'s disclosure to his brother in the years between the abuse and the eventual report to authorities. The state also pointed out the lack of evidence to support a "revenge motive" for the victims. Finally, the state focused on Dr. Bassman's testimony of suppressed memory, with suppression not unusual with such young, child victims. Dr. Bassman rejected the concept of repressed memory, and agreed that repressed memory is a very

9.

rare phenomena. Dr. Bassman also described the concept of "grooming," and the prosecutor pointed out the way Mick groomed each of the victims. The prosecution argued that Mick exploited E.M.'s love and devotion, L.S.'s bladder-control issues, and E.S.'s reputation as a troubled child to perpetuate his crimes.

{¶ 22} The case was submitted to the jury.

{¶ 23} In case No. 2014-CR-0196, the jury found Mick guilty of Count Three, rape of E.M., and acquitted him on the remaining counts, including all counts in which L.S. was alleged as a victim.

{¶ 24} In case No. 2016-CR-0335, the jury found Mick guilty of all eight counts of gross sexual imposition against E.S.

{¶ 25} The trial court imposed a sentence of life in prison in case No. 2014-CR-0196. The trial court imposed sentences of 12 months as to Counts One, Three, Five, and Seven, and three years as to Counts Two, Four, Six, and Eight, and ordered the sentences to run concurrently to each other, but consecutive to the life sentence in case No. 2014-CR-0196. The parties stipulated that Mick met the requirements for classification as a Tier II sexual offender in each case, and the trial court entered that finding.

## II. Assignments of Error

{¶ 26} Mick filed a timely appeal of the judgment, and raises the following assignments of error:

1. TRIAL COUNSEL WAS INCOMPETENT UNDER THE STANDARDS OF STRICKLAND V. WASHINGTON, 466 US 688 (1984).

2. PROCEEDING WITH THE THIRD TRIAL OF RICHARD MICK VIOLATED THE DOUBLE JEOPARDY CLAUSE.

### III.  Ineffective Assistance

{¶ 27} Mick raises three issues in challenging his trial counsel's performance.  He argues his trial counsel was ineffective because he failed to call his expert to testify on recovered memory syndrome.  He also argues his counsel was ineffective because he permitted a retired police detective to remain on the jury.  Finally, Mick argues his trial counsel was ineffective because he failed to challenge witness testimony based on a lack of corroborating evidence.

{¶ 28} The Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee a right to effective assistance of counsel. *Mick I,* 2018-Ohio-999, 108 N.E.3d 1149 at ¶ 17, citing *Missouri v. Frye,* 566 U.S. 134, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 29} To prevail on his claim of ineffective assistance of counsel, Mick must first establish deficient performance by counsel.  *Strickland* at 687.  To do so, he "must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *State v. Lawson,* 64 Ohio St.3d 336, 341, 595

11.

N.E.2d 902 (1992), quoting *Strickland* at 689. Furthermore, for matters "within the ambit of trial strategy," ineffective assistance is not demonstrated by "debatable trial tactics." *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101, citing *State v. Hoffner,* 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 45 (additional citation omitted.).

{¶ 30} Should Mick demonstrate deficient performance by his trial counsel, he must next demonstrate prejudice, or "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland* at 687.

{¶ 31} We address each issue in turn.

**A. Expert Testimony**

{¶ 32} Mick first challenges the failure of his trial counsel to call his own expert witness to testify regarding recovered memory syndrome. In support, Mick argues his trial counsel wrongly believed "that he had established what he needed from [his cross-examination of] the state's expert." In essence, Mick disagrees with his counsel's trial strategy.

{¶ 33} At trial, counsel cross-examined the state's expert, Dr. Bassman, and elicited testimony that cast doubt on the validity of repressed memories. Dr. Bassman also agreed that memory could be influenced by circumstances or even certain types of therapy. However, the prosecution offered Dr. Bassman as an expert on delayed disclosure, and not repressed memory. We have previously deemed such expert

12.

testimony admissible. *See State v. Salvidar,* 6th Dist. Lucas No. L-21-1056, 2022-Ohio-144, ¶ 45, citing *State v. McGlown,* 6th Dist. Lucas No. L-07-1163, 2009-Ohio-2160, ¶ 39-40, citing *State v. Frost,* 6th Dist. Lucas Nos. L-06-1142, L-06-1143, 2007-Ohio-3469, *State v. Solether,* 6th Dist. Wood No. WD-07-053, 2008-Ohio-4738.

{¶ 34} Whether to call an expert is generally deemed a question of strategy. *State v. Heiney,* 6th Dist. Lucas No. L-19-1115, 2020-Ohio-2761, ¶ 29, citing *State v. Teets,* 4th Dist. Pickaway No. 17CA21, 2018-Ohio-5019, ¶ 42. In support of his claimed error, Mick provides no argument or reference to the record to suggest not calling an expert was anything but a strategic decision. "[T]he failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Nicholas,* 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993), citing *State v. Thompson* (1987), 33 Ohio St.3d 1, 10-11, 514 N.E.2d 407 (1987).

{¶ 35} We therefore find no deficiency of trial counsel based on his decision to rely on his cross-examination of the state's expert, and forgo calling his own expert at trial. Accordingly, Mick fails to demonstrate ineffective assistance of counsel based on this strategy.

### B. Jury Selection

{¶ 36} Next, Mick challenges his trial counsel's decision to leave a retired police detective on the jury. He argues that police may not serve as federal jurors, and claims, without support, that "[t]he lack of fairness is built in and bias cannot be avoided." Mick takes issue with his counsel's questioning of the detective during voir dire, arguing

13.

counsel "was making points to the jury panel but not listening to the detective."[1]

However, Mick fails to identify any response by the police detective that demonstrated bias, let alone the implicit bias he argues as unavoidable.

{¶ 37} Contrary to Mick's contention, courts do not recognize an unavoidable, built-in bias, preventing law enforcement officers from serving on a jury. Instead, the inquiry focuses on whether the prospective juror, who also happens to be a police officer, will follow the law and the judge's instructions. In *State v. Murphy,* 91 Ohio St.3d 516, 527, 848 N.E.2d 765 (2001), a police officer was a prospective juror and the trial court denied the defense request to excuse him for cause. In individual voir dire, the officer indicated, "I will hear the case as the facts are presented to me. I can't change who I am. * * * I don't feel it would be slanted. Maybe somebody else would think it would be." *Murphy* at 527. He also acknowledged that the defense probably did not want him on the jury, stating, "If I was you guys, I wouldn't want me here." *Id.* The Ohio Supreme Court held that, based on the context of that statement, the trial court reasonably interpreted the officer's statement to mean "defendants generally do not want police officers on the jury." *Id.* Without a demonstration of bias, the Court found the trial court did not err in denying a challenge based on cause. *Id.* at 528.

{¶ 38} In this case, Mick's trial counsel did not challenge the officer for cause. He also did not use a peremptory challenge to remove the detective from the jury. During

---

[1] Mick also generally references the Cambridge Law Journal, Vol. 71, No. 2, July 2012. He provides no reference to any content within this issue of the publication that applies in his case.

voir dire, counsel questioned the detective as to whether his prior employment with the police and as an investigator for the prosecutor's office, or his current employment as a parole officer would influence his deliberations or cause him to "put [his] thumb on the scale" for the state. The detective indicated he could be fair. Trial counsel elicited no response from the detective indicating any bias or prejudice against the defense.

{¶ 39} A trial attorney's choice regarding the use of a peremptory challenge is a matter of trial strategy, even if that prospective juror worked or has worked within law enforcement. *See, e.g., State v. Dean,* 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 263-264 (prospective juror, who had worked within the prison system as a nurse, demonstrated no bias, and failure to use a peremptory challenge was "part of trial strategy"), citing *State v. Trimble,* 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 99; *State v. Braden,* 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 37 (parole officer permitted to serve on jury in capital case, lacking any demonstration of bias) (additional citations omitted.).

{¶ 40} Mick points to nothing in the record demonstrating the detective was biased. He also fails to provide any argument to support his contention that "an effective defense attorney should automatically excuse a police officer, who, when questioned about [his] job, stated [he] could be impartial and judge the case fairly." *See State v. Hall,* 11th Dist. Lake No. 2019-L-027, 2019-Ohio-4000, ¶ 30. Furthermore, opting not to use a peremptory challenge to remove the detective from the jury was within the realm of trial strategy. We therefore find no deficient performance to support an ineffective

assistance of counsel claim, and Mick's argument regarding the detective on his jury is without merit.

## C.  Cross-Examination and Corroboration

{¶ 41} Finally, Mick argues his trial counsel was ineffective by failing to cross examine E.M. and E.S. regarding their claims of disclosure, prior to each victim's eventual report to Children Services.  As to E.M., Mick disputes her claim that she reported the abuse to Pastor Johnny G., because as a pastor, he was a mandatory reporter and no report was made.  As to E.S., Mick argues that his claim of telling his brother about the abuse was unlikely, because the brother did not acknowledge that disclosure until three years later, after Children Services was involved.

{¶ 42} At trial, Mick's counsel questioned E.M. and E.S. regarding their earlier disclosures.  While he did not question E.M. about Pastor Johnny G.'s duty to report as a mandatory reporter, it is not clear that E.M. would have had any knowledge in this area.  Counsel was able to elicit testimony regarding mandatory reporters, moreover, by cross examining the pastor to whom L.S. confided.  Also, the fact that E.M. made no mention of the abuse by Mick in her diary was addressed during trial.  Trial counsel also challenged E.S.'s brother on cross examination, questioning why he would keep such a disclosure to himself for three years.

{¶ 43} "The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel."  *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101, citing *State v.*

16.

*Hoffner,* 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 45; *State v. Campbell,* 90 Ohio St.3d 320, 339, 738 N.E.2d 1178 (2000). In this case, even if trial counsel could have asked better questions on cross-examination, Mick fails to demonstrate deficient performance considering the highly deferential review of that performance on appeal. To be considered deficient, an attorney's representation must fall "below an objective standard of reasonableness," with recognition that there are "countless ways to provide effective assistance in any given case." *State v. Bradley,* 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), citing *Strickland* at 687-689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 44} In arguing ineffective cross-examination, Mick mainly challenges the credibility of his accusers based on a lack of contemporaneous, third-party eye-witnesses to the conduct, and church policies that he argues made such conduct impossible. Trial counsel raised this argument at trial, relying on cross-examination of the state's witnesses and testimony from defense witnesses. While Mick now argues his trial counsel could have asked other questions as part of his cross-examination, he fails to demonstrate his counsel's performance was deficient. Therefore, Mick fails to demonstrate ineffective assistance based on his trial counsel's strategy for cross-examination.

{¶ 45} Each of the issues raised by Mick, relative to ineffective assistance of counsel, fall within objectively reasonable trial strategy. Accordingly, we find Mick's first assignment of error regarding ineffective assistance of counsel not well-taken.

17.

## IV. Double Jeopardy

{¶ 46} In his second assignment of error, Mick argues the trial court erred in denying his motion to dismiss, prior to his third trial. During Mick's second trial, Detective Nixon referenced a supplemental police report that had not been disclosed to the defense. The report concerned statements made by E.S. and his brother, and Mick's counsel argued there were discrepancies between statements made in 2016 and 2019 that would have been relevant for impeachment purposes. At Mick's request, and over the objection of the state, the trial court granted a mistrial, noting the case turned on credibility of the witnesses, and therefore, the failure to disclose the report as a source of potential impeachment evidence, prevented a fair trial. Mick did not argue bad faith and indicated the remedy for the discovery violation was a new trial. The state contended, without any challenge, that the failure to provide the supplement report was unintentional. The trial court immediately set the matter for a scheduling pretrial, to select a new trial date.

{¶ 47} Prior to the assigned trial date, Mick filed a motion to dismiss, seeking dismissal with prejudice based on double jeopardy protections, citing the years he has been under indictment. In support, Mick argued that the prosecutor in the second trial had engaged in a "pattern" of concealment, citing one other, unrelated case, in which the prosecutor allegedly withheld exculpatory evidence from another criminal defendant, resulting in the trial court suppressing all evidence and dismissing that defendant's case. Mick further argued that prosecutor's office fired this prosecutor for her "pattern" of

18.

misconduct, based on this one other case, a wholly unsupported assertion. Significantly, Mick's motion made no reference to the actual record in his case.

{¶ 48} The state opposed dismissal, noting the undisclosed report contained possible impeachment material that was otherwise available and in the possession of the defense through other sources. The state further argued that the trial court made no finding of intentional misconduct, and the defense never requested such a finding, instead seeking a mistrial based on constitutional grounds. Additionally, the state argued that Mick's reference to the length of the proceedings ignores his own fault in causing delay, including the delay until he filed his motion for dismissal on August 6, 2020, close to the scheduled start of his third trial.

{¶ 49} "The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, protects a criminal defendant from repeated prosecutions for the same offense. *State v. Roughton,* 132 Ohio App.3d 268, 278, 724 N.E.2d 1193 (6th Dist.1999), quoting *State v. Loza,* 71 Ohio St.3d 61, 70, 641 N.E.2d 1082 (1994), citing *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). Generally, when the defense requests a mistrial, the Double Jeopardy Clause will not bar a retrial. *Loza* at 70, citing *Kennedy* at 673. "A narrow exception lies where the request for a mistrial is precipitated by prosecutorial misconduct that was intentionally calculated to cause or invite a mistrial." *Id*., citing *Kennedy* at 678–679 (additional citation omitted.).

19.

{¶ 50} In order to merit dismissal, Mick needed to demonstrate his circumstances fell within the narrow exception, or that the prosecution goaded him into requesting a mistrial. *Roughton* at 279, citing *Loza* at 60, citing *Kennedy* at 676. Mick cites to nothing within the record of his case demonstrating misconduct, and the record indicates Mick did not argue he was goaded into seeking a mistrial at the end of his second case. At best, Mick demonstrates a bad actor within the prosecutor's office without identifying misconduct that related to his own case. In seeking to prevent a third trial, he relied on this bad actor while ignoring the facts in his own case that failed to demonstrate an intentional and calculated scheme to cause a mistrial.

{¶ 51} In denying the motion for mistrial, the trial court found an inadvertent discovery violation, but no intentional misconduct. Having carefully reviewed the proceedings, we find the record supports this conclusion. Accordingly, we find Mick's second assignment of error not well-taken.

## V. Conclusion

{¶ 52} Finding substantial justice has been done, we affirm the judgment of the Erie County Court of Common Pleas. Mick is ordered to pay the costs of this appeal as provided by App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

Gene A. Zmuda, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.